AMARO ET AL. *v.* STATE OF INDIANA.

[No. 767S37. Filed August 16, 1968.]

*Bernard M. Tetek,* of Gary, for appellants.

*John J. Dillon,* Attorney General, and *Duejean C. Garrett,* Deputy Attorney General, for appellee.

LEWIS, C. J.—The appellants herein are appealing from a conviction in the Criminal Court of Lake County of the crime of Manslaughter. Prosecution was commenced on the basis of a single indictment charging defendants with Second-Degree Murder. Pleas of not guilty were subsequently entered and judgment entered on the verdict by a jury.

The error assigned and relied on by the appellants is the overruling of their motion for a new trial by the Trial Court. Both appellants specify as error:

(1) That the Trial Court erred in overruling appellants' petitions to take a pre-trial deposition of a State's witness.

Appellant Vizcorrondo also specifies as error:

(1) That the verdict of the jury is not sustained by sufficient evidence; and

(2) That the verdict of the jury is contrary to law.

Appellants' convictions were based on Burns' Indiana Statutes, Anno., (1956 Repl.), § § 10-3405 and 9-102, which provide, respectively, as follows:

"Whoever voluntarily kills any human being without malice, expressed or implied, in a sudden heat, or involuntarily in the commission of some unlawful act, is guilty of manslaughter, and on conviction shall be imprisoned not less than two [2] years nor more than twenty-one [21] years."

"Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment, or affidavit, tried and convicted in the same manner as if he were a principal, * * * and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

The evidence viewed most favorable to the State along with all reasonable inferences reveals the following: Juan Machuca and Salvador Sanchez were both, at approximately 12:15 A.M., waiting at a bus stop near one of the exits of the Inland Steel Plant in East Chicago. The two men were not acquainted with each other. Machuca, as a prosecuting witness, stated that while they stood there he noticed the appellant Vizcorrondo and another man drive by, and then pass by in the opposite direction a few minutes later. Two or three minutes from this last pass by the bus stop by the two men, Machuca

was approached on foot by the appellant Amaro, who pulled a pistol from his belt and proceeded to shoot Machuca in the left side under the arm. Amaro then fired a second shot which hit Sanchez, who immediately fell fatally wounded to the ground with a wound of the heart and liver. There were no other eye witnesses to the shooting. No one, including Machuca, saw the pathway of escape used by the attacker, nor were there any sounds of an automobile pulling away from the vicinity. Two hours later, the police, following up the identifications offered by the witness, arrested both appellants, who were discovered sitting in an automobile in front of Vizcorrondo's residence.

Appellant Vizcorrondo vigorously contends that his mere companionship with Amaro, who was identified by Machuca as the assailant, will not support a conviction of manslaughter as an accessory. While it is not necessary to deal with this contention to resolve this appeal, we feel obliged to answer, so that the status of the record upon which appellant Vizcorrondo was convicted might be set straight. This Court recently stated:

> "If the evidence merely tends to establish a suspicion of guilt, or the mere opportunity to do so it is clearly insufficient to sustain the conviction. . . . If mere opportunity or suspicion are sufficient to convict an accused of a felonious homicide or murder in the second degree then the life and liberty of many people may be summarily sacrificed. The law requires substantial evidence to prove guilt beyond a reasonable doubt. We cannot predicate an affirmance of guilt upon mere possibility because of opportunity or suspicion. . . ." *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874, 881.

The only evidence presented on the record in this regard is the appellant Vizcorrondo's proximity to the place of the shooting a few minutes before its occurrence and his companionship with the principal offender, Amaro, before and after the attack. There was presented no evidence of any co-operation, or even approval of the conduct of his co-

defendant. He was not present at the scene of the shooting and was not seen with the gunman at any time shortly after the assault. No evidence was presented by the prosecution to infer a common design between the two men, nor was there any evidence of any word or act which might have reasonably suggested encouragement or incitement to the jury.

On the basis of mere companionship shortly before the shooting and two hours afterward, this Court cannot, as a matter of law, place its stamp of approval on the conviction of appellant Vizcorrondo as an accessory to manslaughter. It has been urged before this Court that there is a permissible inference which can be drawn from the evidence adduced at trial: to-wit, that the appellant Vizcorrondo was present at the scene of the shooting, either actually or constructively. However, while we do not sanction the inference as valid, we do conclude that it, as a matter of law, contributes nothing to the sufficiency of the evidence.

"It is plainly not the law that one can be guilty of murder without overt act, who by neither word nor gesture has done anything to contribute to the commission of the homicide or to assist, encourage, or evince approval of it at or before the fact, and of whom it only appears that he was present and knew of the crime and mentally approved it. . . ." *Clem* v. *State* (1870), 33 Ind. 418, 432.

Turning to another jurisdiction, it is held that aiding and abetting is not shown by mere relationship among the accused, or by their mere association at a time when a crime was committed by one of them. *Moore* v. *Commonwealth* (1955), 282 S. W. 2d 613, (Ky.)

While we recognize that the circumstances and conduct surrounding an individual both before and after the commission of a crime by another may be considered in determining whether aiding and abetting might be inferred (*Cox* v. *State* (1964), 246 Ind. 91, 201 N. E. 2d 693; *Mobley* v. *State* (1949), 227 Ind. 335, 85 N. E. 2d 489), it must be frankly

stated that there is presented nowhere in the record on this appeal any probative evidence from which a reasonable inference might be drawn to sustain the State's burden of proof, as outlined in *Guetling* v. *State* (1926), 198 Ind. 718, 723, 153 N. E. 765.

". . . (It is) incumbent upon the State to introduce evidence to prove, or from which the jury might reasonably infer, that these appellants . . . did at least one of the acts mentioned in the statute . . ."

Appellants have alleged reversible error on the part of the Trial Court in the overruling of their petitions to take a pretrial deposition of a State's witness, to-wit: Juan Machuca. The petitions were submitted to the Trial Court pursuant to the provisions of Burns' Indiana Statutes, Anno., (1956 Repl.), § 9-1610, which states:

"A defendant, by leave of court or by written notice to the prosecuting attorney, may take the depositions of witnesses residing within or without the state, to be read on trial; and the request of the defendant for such leave of court, or the giving by him of such notice to the prosecuting attorney, shall be deemed a waiver of his constitutional right to object to the taking of depositions of witnesses by the state, relative to the same matter, to be read on the trial: Provided, That leave to take such depositions be given the state, or notice of the taking of such depositions be given the defendant by the prosecuting attorney."

In the instant case, no resistance to the petitions filed with the Trial Court was made by the State at the trial, nor did the Trial Court call for an oral or written argument on the merits of the petition. Appellants, in a well-written brief, contend that the deposition requested under the circumstances of this case was not only authorized by the statute, but was necessary for the preparation of a proper defense, consequently being prejudicial to the denial thereof; and, that the denial was not within the discretion of the Trial Court in that the State failed to show a paramount interest,

nor did the Trial Court on its own motion make such a finding.

The issue raised by the appellants is this: Does Burns' § 9-1610, *supra,* grant to criminal defendants the right to take depositions of potential witnesses without a showing that the witness will not be able to testify on trial, to be denied by the Trial Court only where a paramount interest of the State is shown? We think that within the confines of a limited discretion of the Trial Court to prevent "fishing expeditions" or other abuses, the answer is yes.

The question presented is not one of first impression. In fact, this Court, in *Tullis et al.* v. *Stafford* (1892), 134 Ind. 258, 33 N. E. 1023, laid the foundation for the meaning we place on the language of Burns' § 9-1610, *supra,* with an interpretation of its predecessor statute, Rev. Stat. 1881, Sect. 1805, which stated:

> "The defendant may, by leave of court, take the depositions of witnesses residing outside of the State, to be read on trial; but, before leave is given, the defendant must enter of record his consent that the depositions of witnesses residing out of the State may be taken and read on behalf of the State, relative to the same matter; and the defendant may, on the same terms, by leave of court, or by notice to the prosecuting attorney, take the deposition of any witness conditionally."

The Court, in *Tullis, supra,* first considered the significance of the word "conditionally." It was held that the word "conditionally," which is the only major variance from Burns' § 9-1610, *supra,* referred to the use of the deposition and not to the question of the right to take a deposition.

"Conditionally" is no longer a part of the statute. It is clear that the statute authorizes the taking of depositions by the defendant under some circumstances. The contention of the State in this appeal is basically that the taking of the deposition is not a matter of right, but rests in

the sound discretion of the Trial Court. This argument, however, cannot be sustained by the language of the statute. The deposition of any witness is authorized either by leave of court *OR* by written notice to the prosecuting attorney. The defendant, therefore, is granted two avenues of approach to obtain the right to take the deposition. Notice, then, may be given to the prosecuting attorney without any prior approval of the court. To read into the statute the "sound discretion" of the Trial Court would be to ignore the clear implication of the alternatives offered by the legislature. (See *Tullis, supra,* and *State ex rel. Land* v. *Knox Superior Court* (1968), 249 Ind. 471, 233 N. E. 2d 233.)

This result does not imply, however, that the Trial Court has no control over the exercise of the privilege granted the defendant. It is significant that the legislature did not state that the defendant *shall* be permitted the taking of depositions of any witness, but rather stated that he *may*, by leave of court or by notice to the prosecuting attorney, take the deposition of witnesses residing within or without the state. We believe that this distinction in the language provides, consistent with the traditions of the common law in this area, for a selective and discriminating control by the Trial Court. Potential abuse of the privilege is, of course, a threat. But, this fear must be balanced with the defendant's basic right to prepare a proper defense and with the intent of the legislature to provide a flexible mode of discovery for the criminal defendant. We have held, in a determination of a similar aspect of the criminal discovery procedure:

> ". . . That the trial judge has limited discretion and that when a list of witnesses is requested it should be granted unless the State makes a showing of a paramount interest over that of the defendant." *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536, 540.

It is our opinion that the nature of the privilege granted by the legislature under Burns' § 9-1610, *supra*, calls for a

like control. Of course, the Trial Court may also deny the deposition, much the same as a protective order is issued under the Federal Rules of Civil Procedure for discovery (Rule 30b), if it appears that the defendant is merely venturing on a "fishing trip" and has no legitimate interest to his defense to support the petition. See *Nuckles* v. *State* (1968), 250 Ind. 399, 236 N. E. 2d 818, 819. If the defendant chooses to initiate the deposition process by notice to the prosecuting attorney, it is clear that the State may still, by motion to the Trial Court, resist the deposition.

While we are bound by the wisdom and judgment of the legislature, we note that the provisions in Burns' § 9-1610, *supra*, requiring a waiver by defendants to provide reciprocal discovery for the State falls well within this Court's philosophy concerning the discovery process in criminal matters. Judge Arterburn explained the position as follows:

"... It is, of course, true that we are searching for the truth in any criminal case. However, there are balancing factors which must be taken into consideration in the operation of such a rule. If the defendant is entitled to the production of papers in the file of the State, then it seems to us that there would be logic in the same rule applying to any witness which the defendant may produce. . . ." *Noel* v. *State* (1966), 247 Ind. 426, 215 N. E. 2d 539, 543.

Finally, it is clear that the use of depositions by the defendant in some cases is a practical necessity. In the instant case, the only eye witness to the attack was of Mexican decent and was unable to understand fully the English language. As a consequence, an interpreter was used at trial. The nuances of any language cause variances in interpretation, which is strikingly displayed in the transcript of the witnesses' examination in the trial. Appellant asserts, as we partially agree, that he was unable to ascertain on trial the accuracy of the interpretation rendered by the court-appointed interpreter, which, in part, served as a barrier to an effective cross-examination.

Therefore, as to both appellants, we reverse the Trial Court's overruling of the motion for new trial.

Arterburn, Hunter and Jackson, JJ., concur; Mote, J., not participating.

NOTE.—Reported in 239 N. E. 2d 394.