ANTROBUS AND CODALATA *v.* STATE OF INDIANA.

[No. 169S6. Filed February 3, 1970. No petition for rehearing filed.]

*George T. Popcheff, Frederick J. Graf,* both of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Aaron T. Jahr,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from the conviction of both appellants for First Degree Burglary in a trial without jury in the Marion County Criminal Court 1.

Appellants and one Ronald Schoolcraft were charged with breaking into the home of Marjorie Trivett and removing a

safe containing $5,000.00. Marjorie Trivett testified concerning the breaking, entering and theft of the safe but was not a witness to the offense so she could not identify any of the burglars. The only witness at the trial offering evidence that in any way tied appellants to the crime was the accomplice Ronald Schoolcraft. Appellants were indicted for the offense along with Schoolcraft but upon their motion were granted a separate trial.

Appellants first allege that the trial court erred in denying the appellants' attempted discovery in two respects: (I) The trial court denied appellants' motion requesting appellee to produce certain pre-trial statements concerning this case made by the witness Schoolcraft to the grand jury and to the police, for the purpose of cross examination and impeachment of the witness. (II) The trial court denied appellants' pre-trial petition for a psychiatric examination of the prosecution witness Schoolcraft in order to determine his competency as a witness.

## I. CURRENT DISCOVERY PROCEDURES

The rules of discovery applicable in civil proceedings in Indiana courts are not applicable as such in criminal proceedings. However, the *techniques* of discovery embodied in those rules will often be applicable in criminal proceedings and the trial court has the inherent power to implement such discovery techniques as are necessary to provide the defendant a full and fair hearing. *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536; *Johns* v. *State* (1968), 251 Ind. 172, 240 N. E. 2d 60.

The guiding principle to be followed by trial courts in dealing with the area of criminal discovery was set down in *Bernard* v. *State, supra.* That case involved a request by a criminal defendant for a list of the names of witnesses to be used against him. In holding that it was error to deny such a motion this Court said:

"It is self-evident that a list of witnesses would have been beneficial in the preparation of appellant's case. We do not

■ require that the State lay bare its case in advance of trial nor that the criminal defendant be allowed a fishing expedition, however these objections do not arise when a list of witnesses is requested *and the State fails to show a paramount interest in non-disclosure.*" (Emphasis added.) 248 Ind. at 692.

This principle was followed in *Johns* v. *State, supra,* the Court saying:

"Under the doctrine outlined in Bernard v. State it is clear that the trial court, when requested by the defendant in a criminal proceeding has the duty to order the state to furnish the defendant with the names and addresses of those witnesses upon whom the state intends to rely in the prosecution of the case, *unless the state is able to show a paramount interest in non disclosure.* . . . The purpose of the Bernard doctrine is to insure justice and fairness in criminal proceedings and it is axiomatic that an accused is not justly and fairly tried when his counsel is compelled to maneuver in a factual vacuum. Nor is fairness and justice enhanced when convictions are gained through surprise, or by the prosecution misleading the defense." (Emphasis added.) 240 N. E. 2d 60.

In *Amaro* v. *State* (1968), 251 Ind. 88, 239 N. E. 2d 394, the principle was used to support the defendant's right to take pretrial depositions of prosecuting witnesses the court saying ". . . the denial was not within the discretion of the trial court in that the State failed to show a paramount interest nor did the trial court on its own motion make such a finding." See also *Nuckles* v. *State* (1968), 250 Ind. 399, 236 N. E. 2d 818.

We believe that the principle relied on in the above cases provides the basis for the review of the appellants' allegations of error.

## II. DISCOVERY OF PRE-TRIAL STATEMENTS

The first issue is whether the trial court erred in denying appellants' motion requesting appellee to produce pre-trial statements concerning this case made to the police and the

grand jury by the witness Schoolcraft, for the purpose of cross examination and impeachment of the witness. We will first discuss the question concerning statements made to the police.

## A. STATEMENTS MADE TO POLICE

After cross examining the witness at some length, appellants made a motion to require the State to produce "any and all written statements of the witness . . . to aid the defense in cross examining the witness." The trial court denied this motion saying it was not up to trial judges to change the law in this area.

On re-cross examination the following exchange took place between the witness and appellants' attorney:

"Q. Mr. Schoolcraft, when you talked to some detectives about this case, did you sign a statement for them?

A. Sir, I talked to the F.B.I. before I ever did talk to any investigators, before I ever did clear myself up, my past.

Q. Well, my question to you, Mr. Schoolcraft, is have you made a written statement about this case involving Codalata and Antrobus . . .

A. That's correct sir.

Q. . . . and Marge Trivett. Who has the written statement?

A. I made a written statement.

Q. Who has the written statement? Who took the written Statements?

A. Mr. Stout did, sir.

Q. Mr. Stout. Was there one or more than one?

A. Atwell was there too, sir, was present.

Q. All right, was there one statement or more than one statement taken from you?

A. Sir, I don't know.

Q. How many did you sign?

A. I signed statements on everything that I had did, sir.

Q. Did you read them before you signed them?

A. Yes, sir, I was advised of my constitutional rights.

> MR. ORR: All right, at this time the defendants Codalata and Antrobus for the record, Your Honor, renew their motions for copies of the written statements the witness has said has been given to Detectives Stout and Atwell."

There was no response by the State to the appellants' motion to produce and the trial court denied the motion.

The sole evidence connecting appellants with the crime charged was this testimony of the accomplice, Schoolcraft. The appellants were not arrested until after the police had received information concerning the crime from Schoolcraft. The witness testified that he had used dope in the past, had been arrested on a "pre-mental charge," had been under observation for thirty days in the psychiatric ward of General Hospital, had attempted suicide while in the jail, had attacked a police officer with a knife, was being used as a prosecuting witness in nineteen pending cases, had two prior convictions for burglary and one for arson, and had still not been sentenced for the crime for which he was indicted jointly with appellants. The witness also admitted he had previously testified against appellant Codalata in another case where appellant was found not guilty. In this context it is obvious that appellants had a great interest in inspecting the witness' pre-trial statements for possible use in cross examination and impeachment.

We hold that under the principles of the *Bernard* case it was error for the trial court, in the absence of the appellee showing a paramount interest in non-disclosure, to deny appellants' motion requesting production by appellee of the witness' pre-trial statements made to the police officers for the purpose of cross-examination and impeachment of the witness.

This general rule has been adopted in many jurisdictions in the United States. *Jencks* v. *U. S.* (1957), 353 U. S. 657, 1 L. Ed. 2d 1103, 77 S. Ct. 1007, adopted the rule for the entire federal judiciary. Later the *Jencks* rule was substan-

tially incorporated in Title 18 U. S. C. § 3500, which now provides the federal rule for obtaining such statements. *State* v. *Ashton* (1963), 95 Ariz. 37, 386 P. 2d 83; *People* v. *Estrada* (1960), 54 Cal. 2d 713, 355 P. 2d 641; *State* v. *Hutchins* (1957), 51 Del. 100, 138 A. 2d 342; *People* v. *Neiman* (1964), 30 Ill. 2d 393, 197 N. E. 2d 8; *People* v. *Salimone* (1933), 265 Mich. 486, 251 N. W. 594; *State* v. *Backman* (1917), 41 Nev. 197, 168 P. 733; *State* v. *Hunt* (1958), 25 N. J. 514, 138 A. 2d 1; *People* v. *Rosario* (1961), 9 N. Y. 2d 286, 173 N. E. 2d 881; *Commonwealth* v. *Smith* (1965), 417 Pa. 321, 208 A. 2d 219; *Pruitt* v. *State* (1962), 172 Tex. Cr. App. 187, 355 S. W. 2d 528.

With respect to a defendant's right to obtain such statements we hold the rule to be this: First, the defendant must lay the proper foundation for his motion or the trial court may properly deny it. An adequate foundation is laid when: (1) The witness whose statement is sought has testified on direct examination; (2) A substantially verbatim transcription of statements made by the witness prior to trial is shown to probably be within the control of the prosecution; and, (3) The statements relate to matters covered in the witness' testimony in the present case.

After laying this foundation, the defendant may move the trial court to require the State to produce such statements for use by the defense in cross examination and impeachment of the witness. If the foundation is proper the trial court must grant the motion and order the statements turned directly over to the defendant *unless* the State alleges: (a) There are no such statements within the control of the State. The trial court must conduct a hearing on the conflicting claims of the parties to resolve this issue. (b) There is a necessity for keeping the contents of the statements confidential. (c) The statement also contains matter not related to the matters covered in witness' testimony and the State does not wish to reveal that portion. In the latter two cases the statements need not be given directly to the de-

fendant but should be given to the trial court for his decision concerning the State's claim. If the trial court agrees with the State then on (b) and (c) the trial court may deny defendant's motion or turn over to the defendant only the relevant portion of the statement.

The motion made on re-cross examination met the foundation requirements set out above because the witness testified that he gave a signed statement to the police. The excerpt quoted from the record shows that the witness, after testifying for the appellee on direct examination, stated that he had given a signed statement concerning the facts in this case to the police. This was an adequate foundation for appellants' motion to produce these pre-trial statements of the witness for the purpose of cross-examination and impeachment, and in the absence of a showing of the State's paramount interest in non-disclosure it was error for the trial court to deny it.

We note that this rule is a departure from the rule in effect prior to the *Bernard* case. In *Anderson* v. *State* (1959), 239 Ind. 372, 156 N. E. 2d 384, the Court in holding that it was not error to deny the defendant's motion to produce police reports containing statements of prosecuting witnesses said:

> "We do not here decide that under no circumstances may the accused inspect statements made by witnesses which are a part of such file, as where it is first shown that such statements are in direct conflict with the testimony of the witnesses in open court and that such prior statements would prove the innocence of the accused. There was no attempt to prove such conflict in this case." 239 Ind. at 376.

We believe the better rule does not require a defendant to prove an inconsistency between the statement and the testimony of the witness before he even knows what the witness said in the statement. As the Supreme Court said in adopting that rule in *Jencks* v. *U. S., supra*:

> "Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the wit-

ness recording the events before time dulls treacherous memory. Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contract in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony.

"Requiring the accused first to show conflict between the reports and the testimony is actually to deny the accused evidence relevant and material to his defense. The occasion for determining a conflict cannot arise until after the witness has testified, and unless he admits conflict, as in Gordon, the accused is helpless to know or discover conflict without inspecting the reports. A requirement of a showing of conflict would be clearly incompatible with our standards for the administration of criminal justice in the federal courts and must therefore be rejected. For the interest of the United States in a criminal prosecution '. . . is not that it shall win a case, but that justice shal be done. . . .' " 353 U. S. 668, 669.

In a leading New York case, *People* v. *Rosario, supra,* the court said:

"A pretrial statement of a witness for the prosecution is valuable not just as a source of contradictions with which to confront him and discredit his trial testimony. Even statements seemingly in harmony with such testimony may contain matter which will prove helpful on cross-examination. They may reflect a witness' bias, for instance, or otherwise supply the defendant with knowledge essential to the neutralization of the damaging testimony of the witness which might, perhaps, turn the scales in his favor. Shades of meaning, stress, additions or omissions may be found which will place the witness' answers upon direct examination in an entirely different light. . . .

"Furthermore, omissions, contrasts and even contradictions, vital perhaps, for discrediting a witness, are certainly not as apparent to the impartial presiding judge as to single-minded counsel for the accused; the latter is in a far better position to appraise the value of a witness' pretrial statements for impeachment purposes. Until his attorney has an opportunity to see the statement, it is asked, how can he effectively answer the trial judge's assertion that it

contains nothing at variance with the testimony given or, at least, useful to him in his attempt to discredit such witness?"

See also *People* v. *Estrada, supra*; *People* v. *Chapman* (1959), 52 Cal. 2d 95, 338 P. 2d 428; *People* v. *Wolff* (1960), 19 Ill. 2d 318, 167 N. E. 2d 197; *Palermo* v. *U. S.* (1959), 360 U. S. 343, 3 L. Ed. 2d 1287, 79 S. Ct. 1217, interpreting Title 18 U. S. C. § 3500 (Jencks Act).

We explicitly refrain from discussing the legal requirements for the admissibility of such a statement into evidence. We deal here only with appellants' right to inspect the statement to determine its possible use in cross examination and impeachment of the witness.

Neither does our rule require a defendant to show prior to his even seeing the statement that it would prove the innocence of the defendant. We do not see how a defendant could ever satisfy that requirement but in any case it is irrelevant because the issue here is under what conditions may a defendant inspect the statement to determine its possible use in cross examining and impeaching the credibility of the witness. Obviously it may have such a use without directly proving the innocence of the defendant.

## B. STATEMENTS MADE TO THE GRAND JURY

We believe the above rule applies to statements made by the witness to the grand jury as well as statements made to law enforcement agents of the State. Such statements have as much possibility of being useful in cross examining and impeaching the credibility of the witness as any other type of pre-trial statement and there is no good reason to treat them differently unless the prosecution shows a paramount interest in non-disclosure.

For examples of other jurisdictions adopting this rule see: *Dennis* v. *U. S.* (1966), 384 U. S. 855, 16 L. Ed. 2d 973, 86

S. Ct. 1840 (where the United States Supreme Court affirmed the rule for the federal judiciary) ; *People* v. *Johnson* (1964), 31 Ill. 2d 602, 203 N. E. 2d 399; *State* v. *DiModica* (1963), 40 N. J. 404, 192 A. 2d 825; *People* v. *Agron* (1961), 10 N. Y. 2d 130, 176 N. E. 2d 556.

In Indiana, *Thrawley* v. *State* (1898), 153 Ind. 375, 55 N. E. 95, is the basic case adhering to the rule of non-disclosure of such statements and the reasoning there was recently adopted in *Mahoney* v. *State* (1964), 245 Ind. 581, 201 N. E. 2d 271. Several reasons were offered to support the rule of non-disclosure but the only one which carries any weight at all is that the defendant had a statutory right to call a grand juror to testify concerning the testimony of witnesses before the grand jury but he failed to pursue his statutory remedy.

The statute referred to is now Burns' § 9-817, Ind. Acts 1905, ch. 169, § 103, which says in part:

> "A member of the grand jury may, however, be required by any court to disclose the testimony of a witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court. . . ."

First, we note that reliance by the court on this statute removes from consideration any claim that a rule of non-disclosure is based on a requirement of secrecy of the testimony of witnesses before the grand jury. The *Thrawley* and *Mahoney* cases explicitly relied on the defendant's statutory right to have such testimony revealed through a member of the grand jury. Thus, the issue is not one of overturning a secrecy requirement but of choosing which technique for revealing the contents of statements made to the grand jury by the prosecution witness is more practical. The method of calling in a member of the grand jury is a clumsy, expensive, time-consuming, unreliable method for discovering such pre-trial statements of the witness. The grand juror would have to be subpoenaed and then testify from mem-

ory concerning the witness' testimony before the grand jury given months, sometimes years, before the trial. The *availability* of this statutory procedure is not a reason to deny the use of the much simpler, cheaper, more reliable technique of requiring the prosecutor to produce the transcript of the prosecuting witness' testimony before the grand jury for use by the defendant in cross-examination and impeachment of the witness. In addition, the *prosecutor* has *not* been required to pursue that awkward statutory procedure but has been permitted to use a stenographer's transcript of the witness' testimony before the grand jury for the purpose of cross examining and impeaching the witness at trial. *Kidwell* v. *State* (1969), 252 Ind. 585, 251 N. E. 2d 119; *Coppenhaver* v. *State* (1902), 160 Ind. 540, 67 N. E. 453; *Higgins* v. *State* (1901), 157 Ind. 57, 60 N. E. 685. We see absolutely no justification for treating a defendant differently in this respect.

The court in *Thrawley* was apparently offering other reasons in support of its holding when it said:

> "The State is the plaintiff. The indictment is the complaint. It is no more proof than is a complaint in a civil action. The clerk of the grand jury takes minutes of the evidence given before them. They may or may not, be taken correctly by the clerk. These minutes are prereserved for the use of the prosecuting attorney on the trial as a memorandum of what the State's witnesses may be expected to testify to. The defendant is no more entitled to the use of these minutes than is a defendant in a civil case to his adversary's trial brief of the evidence." 153 Ind. at 386.

We see no merit in any of these arguments. The fact that the indictment is not "proof" of the allegations in it is irrelevant and does not alter the fact that the testimony of witnesses given to the grand jury that returned the indictment may be useful to the defendant in cross-examining and impeaching the witness at the trial.

The possibility that the clerk may not transcribe the testimony correctly is present in every case where a witness makes

an oral statement which is taken down or put in writing by someone else and thus does not support a general rule against grand jury transcripts as such. Of course, if the witness' statement is not in writing or taken down substantially verbatim, then there is no "statement" for the prosecution to produce and the State may so allege and prove.

The fact that the prosecution may use the statement of the witness to the grand jury as a memorandum at the trial in no way justifies refusing to allow the defendant to obtain it also and determine for himself its use for cross-examination and impeachment. Since 1899 the methods of copying documents have changed radically and permit the prosecution to have the use of the statement as well as the defendant.

To the extent that this Court was relying on an analogy to the practice in civil procedure the progress of the right of discovery in civil cases renders it completely unpersuasive.

We now look to see whether the appellants laid the proper foundation for their motion to produce Schoolcraft's statement made to the grand jury about this case. On re-direct examination of the witness the prosecutor asked the following questions of the witness:

"Q. Now, you did testify before the grand jury, did you not?
A. That's correct sir.
Q. Did you tell the same story there you did today?
A. Yes, sir.
Q. And you also gave one or more statements to the police in the spring of 1967 on this subject, did you not?
A. That's correct, sir.

> MR. ORR: Now, at this time, Your Honor, the defendants Codalata and Antrobus move for copies of the statements referred to by the prosecution before the grand jury and given to the detectives in this case since the State has voluntarily brought those matters before the Court. I think they are now an issue in the case."

Applying the foundation requirements set out above it is obvious that a substantially verbatim transcription of the witness' grand jury testimony concerning this case was ■ shown to probably be within the control of the prosecution.

This fully met the foundation requirements set out above. The fact that the questions were asked by the prosecution in bolstering the witness' credibility does not alter that fact. If anything, it makes it even more untenable to deny production of the statement to the defendant.

## III. PETITION FOR MENTAL EXAMINATION OF WITNESS

The second issue is whether the trial court erred in denying the following sworn pre-trial petition:

"Come now the defendants and show the Court:

"1. The co-defendant in this cause is Ronald Schoolcraft whom the defendants are informed and verily believe will be a prosecuting witness against them.

"2. Said Ronald Schoolcraft is also prosecuting witness in numerous other criminal cases pending in this Court, in Hendricks County, and otherwise.

"3. That said Ronald Schoolcraft has been indicted for the use of narcotics in the past.

"4. That said Ronald Schoolcraft has had a history of mental disturbances, including at least one arrest on a pre-mental condition as the defendants were informed and verily believe.

"5. Defendants believe that the said Ronald Schoolcraft is a psychopathic liar and that he should be examined by Court appointed psychiatrists and the reports of his examinations be made available to their counsel.

"WHEREFORE, Defendants pray that the defendant Ronald Schoolcraft be examined by a psychiatrist, that the reports of their examinations be made available to their counsel and for all other proper relief."

In their supporting memorandum appellants state more specifically the purpose of the examination:

"First, the defendant, Dickie Codalata would show the Court that Ronald Schoolcraft is a co-defendant in this case and *subject to a suggestion of incompetency.*

\* \* \*

"THEREFORE, the defendant again urges that the Court order Ronald Schoolcraft *to be examined as to his competency.*" (Emphasis added.)

The appellants' sworn petition, uncontraverted in any way by the appellee, was overruled by the trial court without any indication of the basis for his decision.

In the absence of the petition the witness Schoolcraft apparently would have been a competent witness under Ind. Acts 1905, ch. 169, § 235, Burns' § 9-1603:

"Who are competent witnesses.—The following persons are competent witnesses:

\* \* \*

"Third. Accomplices, when they consent to testify."
However, the appellants with their petition raised the issue of the applicability of Ind. Acts 1881 (Spec. Sess.), ch. 38, § 275, Burns' § 2-1714:

"Who are incompetent.—The following persons shall not be competent witnesses:

"First. Persons insane at the time they are offered as witnesses, whether they have been so adjudged or not."

When the witness' competency was challenged under the statute it became the duty of the trial court to determine whether the witness was competent to testify. As this Court said in *Wedmore* v. *State* (1957), 237 Ind. 212, 143 N. E. 2d 649:

"In this case if timely objection to the competency of the prosecuting witness had been made, it would have been the duty of the court to make such an examination as would satisfy it as to her competency or incompetency. 58 Am. Jur. *Witnesses* § 134." 237 Ind. at 223.

See also *Grecco* v. *State* (1960), 240 Ind. 584, 167 N. E. 2d 714; *Carpenter* v. *Dame* (1858), 10 Ind. 125.

Due to the nature of the objection to the witness' competency in this case, an examination which would satisfy the trial court as to his competency would necessarily include an examination of the witness by a psychiatrist. Without such an examination the trial court would have no sound basis for an informed determination as to the witness' alleged incompetency to be a witness due to insanity.

We, therefore, hold that it was error for the trial court to deny appellants' petition for a mental examination of the witness in the absence of a showing by appellee of a ■ paramount interest in denying the petition. Of course, the trial courts has the inherent power to issue a protective order to prevent a defendant from merely delaying the proceedings or harassing the witness.

Judgment of trial court is reversed and the trial court is ordered to grant appellants' motion for new trial.

Hunter, C.J., concurs; Givan, J., concurs with separate opinion in which Arterburn, J., concurs; Jackson, J., concurs in result.

### CONCURRING OPINION

GIVAN, J.—I concur with the result of the majority opinion. However, I wish to point out that I do not concur with the citing of *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536 and *Johns* v. *State* (1968), 251 Ind. 172, 240 N. E. 2d 60. Both of these cases stand for the proposition that it is reversible error for the State to call witnesses whose names have not been furnished to defendant prior to trial. They are not necessary or authority for the decision reached herein, and, therefore, should not be cited.

Arterburn, J., concurs.

NOTE.—Reported in 254 N. E. 2d 873.