CHARLES MATTHEW *v.* STATE OF INDIANA.

[No. 172A49. Filed November 21, 1972.]

*John M. Lyons, Lyons, Aungst & Guastella,* of Valparaiso, for appellant.

*Theodore L. Sendak,* Attorney General, *William D. Bucher,* Deputy Attorney General, for appellee.

SHARP, J.—The Defendant-Appellant, Charles Matthew, was charged by way of Grand Jury indictment in two counts. Count I alleged the offense of homicide while driving under the influence of intoxicating liquor within the meaning of IC 1971, 9-4-1-54, Ind. Ann. Stat. § 47-2001(b)(1) (Burns 1965), which, in pertinent part, provides:

> "Any person who while under the influence of intoxicating liquor . . . drives a vehicle and when so driving causes the death of another person, is guilty of a felony. . . ."

Count II of the indictment alleged the offense of reckless homicide as defined in IC 1971, 9-4-1-54, Ind. Ann. Stat. § 47-2001(a) (Burns 1965), which in pertinent part provides:

> "Any person who drives a vehicle with reckless disregard for the safety of others and thereby causes the death of another person shall be guilty of the offense of reckless homicide. . ."

There are three issues presented for review as follows:

1. Whether there was sufficient evidence to sustain the conviction of reckless homicide and homicide while driving under the influence of intoxicating liquor and specifically, whether there was any evidence to show a corpus delicti for the offense charged in Count I.
2. Whether the trial court properly admitted certain pre-trial statements made by the Defendant-Appellant.
3. Whether the trial court properly admitted certain portions of the Defendant's testimony before the Grand Jury admitted into evidence by a transcript.

This case was tried by a jury resulting in a verdict of guilty on both counts. As to Count I, the Defendant was fined $250.00 and as to Count II, the Defendant was fined $250.00 and sentenced to the Indiana State Prison for a term of not less than one nor more than two years.

A statement of the evidence most favorable to the State is as follows:

Donald Risner, bartender at the Bass Lake Country Club testified that he was working that day "sometime after noon" and that Matthew had two or three vodka martinis. This testimony was substantially corroborated by Roy Wagner, owner of Bass Lake Golf Course who believed Matthew had two or three martinis within a period of about an hour and a half. He also testified that Defendant-Appellant's wife worked as a waitress and was working on Wednesday afternoon, July 29, 1970, and she worked from 11:30 o'clock A.M. to 2:30 o'clock P.M. He further testified that Defendant-Appellant was there "that afternoon" and left with his wife. Wagner testified categorically that Defendant-Appellant was not intoxicated when he left. Each drink contained approximately 1 and ¼ ounces of gin or vodka with vermouth.

Orville Brody, bartender of the Shore Room, testified that Matthew arrived there around 5:30 or 6:00 P.M. that same afternoon with his wife and that they drank one or two highballs, each containing one ounce of whiskey. They stayed for about one-half hour. Thus, the evidence most favorable to the State is that during the period from 11:30 A.M. to 6:30 P.M. on July 29, 1970 that the Defendant-Appellant had consumed a maximum of five drinks having one to one and one-fourth ounces of whiskey, gin or vodka.

Alberta Olson, daughter of the deceased Bertha Olson testified that on July 29, 1970 she and her mother went for a drive in the early evening. At around 8:00 P.M. they were involved in an accident at the junction of County Highway 25 North and 700 East. They were proceeding west on Road 25 North and there was no traffic signal controlling that lane of traffic. The Matthew car was traveling north on County Road 700 East and there is a stop sign regulating the flow of traffic across Road 25 North. Alberta Olson testified that she saw the other car approaching but she thought it would stop. The impact of the collision caused the Olson automobile to spin around two and one-half times before coming to a stop. The accident occurred while there was still daylight.

Stephen Fry, an ambulance attendant called to the scene, testified that he could smell alcohol on Matthew's breath but that he was not intoxicated at that time. This is the only direct evidence of the condition of the Defendant-Appellant at the scene.

Several officers of the Indiana State Police testified that Matthew's car contained beer cans and bottles in the rear seat and that the cans were still cool. Under the front seat was a drinking glass and a styrofoam cup. The cup was wet and smelled strongly of alcohol. In the trunk of the car was a half case of beer, an empty wine bottle and an empty champagne bottle.

About three hours later, at the hospital, Matthew had a conversation with several police officers, including one Officer Bashore.

As will be indicated in this opinion, the Defendant-Appellant voluntarily chose to testify before the Grand Jury proceedings, where he was represented by counsel. We will deal specifically with the admissibility questions in regard to this testimony later in this opinion.

## I.

Appellant contends that there was insufficient evidence of probative value to establish beyond a reasonable doubt all of the necessary elements of the crimes charged in the indictment. In *Jackson* v. *State* (1971), 257 Ind. 477, 275 N.E.2d 538, Justice Hunter repeated the often stated and cited rule:

> "In considering the first contention that the evidence was insufficient to sustain the verdict, this court, upon review will not weigh the evidence nor determine the credibility of witnesses. Only the evidence most favorable to the State and the reasonable inferences to be drawn therefrom will be considered. As long as there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt the verdict will not be disturbed."

See also, *Maynard* v. *State* (1971), 257 Ind. 336, 274 N.E.2d 396, and *Johnson* v. *State,* 152 Ind. App. 104, 281 N.E.2d 922.

As to Count I of the indictment, the only issue in regard to the sufficiency of the evidence concerns the element of whether Appellant was under the influence of intoxicating liquor at the time of the accident. The test as to whether a person is under the influence of intoxicating liquor while driving a vehicle is set out in *Shorter* v. *State* (1954), 234 Ind. 1, 7, 122 N.E.2d 847, as follows:

> " 'Under the influence of intoxicating liquor' are words in common use—they are not words of technical nature—and are well understood by the laity, who know they refer to the impaired condition of thought and action, and the loss of the normal control of one's faculties to a marked degree, caused by drinking intoxicating liquors."

Although there was evidence that the Appellant had been drinking on the day of the accident, the only evidence which even remotely tends to establish that he was under the influence of intoxicating liquor at the time of the accident is the opinion testimony of Officer Bashore, who neither observed nor talked to Appellant at the scene. When Officer Bashore arrived at the scene no one was there. Those involved in the accident had left or been taken to the hospital. Upon arrival, Officer Bashore initiated his investigation but the record is not clear as to how long a time he acutally spent at the scene. Later he went to the hospital to continue the investigation. Officer Bashore spent two hours at the hospital before he made a phone call to the residence of the Appellant requesting he return to the hospital. After this phone call, Officer Bashore waited another hour before he was finally able to interview Appellant. Officer Bashore's testimony is based upon his observation of Appellant at this time, some four hours after the accident and, in part, is as follows:

"Q. What was, will you describe Mr. Matthew and his actions to the jury when you were there with him in the police car?

A. If I understand the question properly, you want his physical description?

Q. Yes, actions, the way he spoke and so forth.

A. His speech was fair, it was somewhat slurred to a point, but not, it was understandable, completely understandable. I have talked to Mr. Matthew prior to that time and his speech was different. His eyes were very bloodshot, his clothes were disarranged. Outside of the car, he walked fairly good; however, at the back of my vehicle, he leaned against my automobile at all times. He supported himself.

Q. Could you smell alcoholic beverages on his breath?

A. Yes, sir, it was very strong."

No evidence is found in the record which would tend to establish that Appellant had nothing to drink from the time of the accident until the time of his meeting with Officer Bashore four hours later. Without first establishing this necessary prerequisite or attempting to qualify Officer Bashore as an expert on the subject, the following testimony occurred:

"Q. Assuming that Mr. Matthew had had nothing to drink between the time of the accident and the time that you interrogated him at the hospital, do you have an opinion as to whether or not he was under the influence of intoxicating liquor at the time of the accident?

A. Yes, sir.

MR. LYONS: I object to that as calling for a conclusion on the part of a non-expert witness.

THE COURT: Over-ruled.

Q. [sic] Yes, I do.

Q. And what is your opinion?

A. That is [sic] ability definitely was impaired.

MR. LYONS: I now move, for purposes of the record, that the answer be stricken.

THE COURT: Over-ruled.

Q. His driving ability was impaired as a result of alcoholic beverages?

A. Yes, sir.

Q. I think the question, Your Honor, Trooper Bashore, was, in your opinion was he under the influence of intoxicating liquor at the time of the collision?

A. Yes sir.

Q. That's your opinion?

A. Yes, sir.

MR. LYONS: That's the question I objected to.

THE COURT: That's the objection I over-ruled."

Appellant contends that Officer Bashore was erroneously allowed to testify concerning his opinion as to whether Appellant was intoxicated at the time of the collision. Appellant objected to the above testimony at the time of trial. However, the issue was not specifically set out in his motion to correct errors and is being advanced for the first time by Appellant in his brief. Under TR. 59(G), Indiana Rules of Civil Procedure, any issues asserted to be errors not stated with specificity in the motion to correct errors are deemed waived on appeal. *Spivey* v. *State* (1971), 257 Ind. 257, 274 N.E.2d 227. Further, Appellant has failed to make any reference to that portion of the transcript which contains the alleged errors and, in support of his contentions, has failed to present in his brief any argument or citations of authority and as a result has not complied with Rule AP. 8.3(A)(7).

But it is axiomatic that, even considering the prejudicial testimony, the State is required to prove each element of issuable fact beyond a reasonable doubt. *Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6. Whether each material fact in issue is supported by sufficient evidence of probative value is a question of law reviewable on appeal. *Easton* v. *State, supra; Baker* v. *State* (1956), 236 Ind. 55, 138 N.E.2d 641. Our Supreme Court in *Gladis* v. *State* (1969), 253 Ind. 73, 251 N.E.2d 658, laid down guidelines for determining if each material allegation has been supported by substantial evidence, as follows:

"(1) To prove an essential allegation beyond a reasonable doubt requires more evidence than to prove an allegation by a preponderance of the evidence.

(2) When there is a reasonable doubt whether defendant's guilt is satisfactorily shown, he must be acquitted.

(3) *Substantial* evidence means more than *seeming* or *imaginary*.

(4) The scintilla of evidence rule does not obtain in this jurisdiction.

(5) Mere suspicion of guilt or opportunity to commit the crime are insufficient to support a conviction."

*Baker* v. *State, supra,* which was quoted with approval in *Easton* v. *State, supra,* states as follows:

"*If the evidence merely tends to establish a suspicion* of guilt, it is not sufficient to sustain a conviction. Robertson v. State (1952), 231 Ind. 368, 108 N.E.2d 711; Steffler v. State (1952), 230 Ind. 557, 104 N.E.2d 729; Todd v. State (1951), 230 Ind. 85, 90, 101 N.E.2d 922; Hiner v. State (1925), 196 Ind. 594, 149 N.E. 168. *Mere opportunity* to commit crime is insufficient to sustain a conviction. Osbon v. State (1938), 213 Ind. 413, 424, 13 N.E.2d 223. *'It is not enough that evidence merely tends* to support the conclusion of guilt, *it must support it.'* Martin v. State (1897), 148 Ind. 519, 521, 47 N.E. 930." (emphasis added)

Justice Hunter, in *Manlove* v. *State* (1968), 250 Ind. 70, 84, 232 N.E.2d 874, states as follows:

"A verdict based merely upon suspicion, opportunity, probability, conjecture, speculation, and unreasonable inferences of guilt gleaned from the vague circumstances in the record before us cannot be upheld and must be reversed."

See also, *Durham* v. *State,* 250 Ind. 555, 238 N.E.2d 9, and *Gladis* v. *State, supra.*

There is no direct evidence to the effect that Appellant was under the influence of intoxicating liquor at the time of the accident. There was circumstantial evidence which established that Appellant had been drinking on the day in question and that there was the odor of alcohol on his breath at the scene.

The only witness who testified as to Appellant's physical condition at the scene of the collision stated that Appellant exhibited none of the characteristics our Supreme Court has deemed necessary to support a conviction of being under the influence of intoxicating liquor. The total sum of such circumstantial evidence is not so conclusive and compelling in character so as to exclude every reasonable hypothesis of the presumption of innocence of Appellant. *Easton* v. *State, supra.* The evidence does not establish beyond a reasonable doubt that Appellant's physical and mental condition at the time of the collision was so impaired that there was a marked degree of loss in his normal control of his faculties which was caused by drinking intoxicating liquor.

Nor does the opinion testimony of Officer Bashore in any way raise the inconclusive nature of the evidence to a level sufficient to support the conviction. Officer Bashore's testimony only has validity and probative value if there is, in fact, evidence that Appellant did not consume any intoxicating liquor in the intervening four hours between the time of the accident and the time of the conversation with Officer Bashore. Since there was no evidence on this crucial point, the jury was left to speculate as to whether any intoxicating liquor was consumed during the critical period and the verdict is based, at most, upon a mere suspicion of guilt.

## II.

We must now determine whether, in the absence of proof that Appellant was intoxicated at the time of the collision, there was sufficient evidence of probative value to sustain the conviction for reckless homicide under Count II of the indictment. The term "reckless disregard for the safety of others" of IC 1971, 9-4-1-54, Ind. Ann. Stat. § 47-2001(a) (Burns 1965), has been interpreted in *Beeman* v. *State* (1953), 232 Ind. 683, 115 N.E.2d 919, as follows:

"It will be seen from the foregoing that a reckless disregard for the safety of others involves a conscious choice of action

which injures another, either with knowledge of serious danger to other involved therein, or with knowledge of facts which would disclose the danger to any reasonable man."

See also *Shorter* v. *State* (1954), 234 Ind. 1, 122 N.E.2d 847.

Proof that Appellant was negligent in the operation of his car is not sufficient under the above test. *Beeman* v. *State, supra. Idol* v. *State* (1953), 233 Ind. 307, 119 N.E.2d 428. The mere probability that the Appellant may have driven his automobile with a disregard for the safety, property and rights of others, will not sustain an inference upon which such possibility can be established as a fact. *Shorter* v. *State, supra.* Although a conviction may be affirmed upon circumstantial evidence alone, such evidence must preclude every other reasonable inference of innocence. *Hardesty* v. *State* (1967), 249 Ind. 518, 231 N.E.2d 510.

The State relies upon *Broderick* v. *State* (1968), 249 Ind. 476, 231 N.E.2d 526 and *Kidwell* v. *State* (1969), 252 Ind. 601, 251 N.E.2d 119, for the affirmance of this case. Both cases, however, involved proof of intoxication in conjunction with excessive speed or driving in a dangerous manner. In this instant case, we do not have the first element, and we conclude that the circumstantial evidence was insufficient to establish that Appellant was driving with a reckless disregard for the safety of others.

The only testimony concerning the operation of Appellant's car prior to and at the time of the accident, is the testimony of Alberta Olson, which, in part, is as follows:

"Q. As you approached the intersection, Alberta, did you see the other car approaching?
A. Yes, I did.
Q. And could you tell the Jury, do you have an idea how fast it was going?
A. I have no idea but I thought he was going to stop.
Q. And after, was there a collision there?

A. I saw him coming and I knew I was hit, but I didn't know anything after that then.

\* \* \*

Q. Do you remember whether or not the other car had its lights on?

A. You mean which car?

Q. The other car than the one you were driving.

A. Other than I was driving?

Q. The other car involved in the accident.

A. No, sir, I didn't notice.

Q. You didn't notice whether headlights were on or not?

A. No, sir.

Q. Is it true that you do not know how far from the intersection this other car was when you first saw it?

A. I have no idea. I just saw him coming. I couldn't judge. I couldn't judge the distance."

There was no testimony as to the speed of Appellant's automobile prior to the accident or as to the manner in which Appellant was operating the automobile. While the above evidence might have been sufficient if coupled with proof of intoxication, standing alone it is not so conclusive as to exclude every reasonable hypothesis of the innocence. *Hardesty* v. *State, supra.*

We hold, therefore, that the verdict of the jury on both counts is not sustained by sufficient evidence and this cause is reversed and remanded for a new trial.

### III.

Since this case is reversed with a new trial, we deem it necessary to deal with one issue which may occur on retrial.

The Defendant-Appellant made a voluntary appearance before the Grand Jury in this case accompanied by his counsel. Very near the end of the trial of this case, after all other evidence had been submitted, the last witness called by the State was the foreman of the Grand Jury. The foreman was handed what was purported to be a verbatim transcript of

the testimony given by the Defendant-Appellant during the Grand Jury proceedings and said foreman swore that such was a true and exact copy of his testimony. Only a portion of the first two pages of the entire thirteen pages of minutes were actually read into evidence. This part of the minutes dealt solely with the admission by the Appellant that he was driving the car at the time of the collision. There was no cross-examination in the Grand Jury proceedings by the Prosecuting Attorney or his Deputy. .

With regard to his testimony given before the Grand Jury the Defendant-Appellant makes no contention here and made none in the trial court that he was not properly advised of all of his constitutional rights within the meaning of *Miranda* v. *Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R. 3d 974. The precise statement of the Defendant's objection out of the presence of the jury is as follows:

"MR. NICHOLS: (Special Prosecuting Attorney) At this time, I will also offer into evidence that part of the grand jury transcript dealing with his admissions on driving the car.

THE COURT: You better get the line.

MR. NICHOLS: On page 1 of the transcript from line 21 through line 17, page 2, down through line 9.

MR. LYONS: Your Honor, the defendant objects to the introduction in evidence of the offered exhibit for the reasons heretofore stated in response to a similar offer for a different one, but substantially the same exhibit or portions thereof and points out that the apparent justification for this offer is that it is a judicial admission and therefore admissible. (arguments off the record)

THE COURT: Now for this purpose, I'm going to overrule the objection on the ground that defendant voluntarily appeared and requested permission to testify and was granted permission to testify and I think it puts him in a totally different position than anything else and for this purpose, I think this is a proper purpose where the last offer, I don't think was a proper offer.

JURY RETURNED INTO OPEN COURT."

The sole argument that the Appellant makes here is that the written transcript was not the proper way to introduce the evidence of these statements made before the Grand Jury. It is the law of Indiana of ancient vintage that a Grand Juror is a competent witness and may be called upon to testify in the case as to what occurred before the Grand Jury where such is otherwise competent, material and relevant. See *Hinshaw* v. *State* (1897), 147 Ind. 334, 47 N.E. 157.

In this case, as a matter of pretrial discovery, the Appellant requested and the trial court granted and made an order to provide the Appellant, at his cost, a copy of his Grand Jury testimony in this case.

Recently, in *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N.E.2d 873, our Indiana Supreme Court stated:

"Thus, the issue is not one of overturning a secrecy requirement but of choosing which technique for revealing the contents of statements made to the grand jury by the prosecution witness is more practical. The method of calling in a member of the grand jury is a clumsy, expensive, time-consuming, unreliable method for discovering such pretrial statements of the witness. The grand juror would have to be subpoenaed and then testify from memory concerning the witness' testimony before the grand jury given months, sometimes years, before the trial. The availability of this statutory procedure is not a reason to deny the use of the much simpler, cheaper, more reliable technique of requiring the prosecutor to produce the transcript of the prosecuting witness' testimony before the grand jury for use by the defendant in cross examination and impeachment of the witness."

Our affirmation of *Antrobus* is strictly limited to the above principle and we do not reach the question of when a defendant must be granted a hearing. See *Yeary* v. *State* (1971), 257 Ind. 159, 273 N.E.2d 96; *Sargent* v. *State* (1972), 153 Ind. App. 421, 287 N.E.2d 795.

There is no assertion here that the verbatim transcript of the testimony of the Defendant-Appellant before the Grand

Jury is in any way inaccurate. The trial court was well within its rights and within the letter and spirit of the *Antrobus* case in permitting the introduction of the Grand Jury transcript of the Appellant's testimony over the objection which was made.

Reversed and remanded.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 289 N.E.2d 336.