Derrick **TOLBERT**, Appellant
(Defendant Below),

v.

**STATE of Indiana,** Appellee
(Plaintiff Below).

**No. 378S45.**

Supreme Court of Indiana.

July 24, 1979.

Kenneth T. Roberts, Wilson, Coleman & Roberts, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen. of Indiana, Jack R. O'Neill, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

The defendant (appellant) was charged with First Degree Murder, Ind.Code § 35–13–4–1 (Burns 1975). Following trial by jury, he was convicted of Second Degree Murder, Ind.Code § 35–1–54–1 (Burns 1975), and sentenced to imprisonment for life. On appeal, he presents the following issues:

(1) Whether the trial court erred in denying a motion to require production of a deputy prosecutor's notes.

(2) Whether the trial court erred in refusing to appoint psychiatrists for the purpose of determining the sanity of a State's witness.

(3) Whether the defendant was denied his Sixth Amendment right to confront that witness.

(4) Whether the trial court erred in refusing to admit into evidence a case history report relative to the decedent previously made by the Marion County Welfare Department.

(5) Whether the trial court erred in refusing to give certain instructions tendered by Defendant.

\* \* \* \* \* \*

## ISSUE I

■ During the direct examination of a witness for the State, it was learned that a legal intern for the Prosecutor's Office had taken "some notes" while interviewing that witness several days before the trial. Defense counsel moved for production of the notes, which motion was overruled. Defendant premises his claim of error upon *Antrobus v. State*, (1970) 253 Ind. 420, 254 N.E.2d 873, provides for in-trial discovery of a witness' pre-trial statement unless the State shows a paramount interest in non-disclosure. However, the State correctly points out that the defendant did not first lay an adequate foundation, as required by *Antrobus*:

"With respect to a defendant's right to obtain such statements we hold the rule to be this: First, the defendant must lay the proper foundation for his motion or the trial court may properly deny it. An adequate foundation is laid when: (1) The witness whose statement is sought has testified on direct examination; (2) *A substantially verbatim transcription of statements made by the witness prior to trial* is shown to probably be within the control of the prosecution; and, (3) The statements relate to matters covered in the witness' testimony in the present case." (Emphasis added.)

253 Ind. at 427, 254 N.E.2d at 876–877.

The defendant did not show that the notes were a "substantially verbatim transcription of statements made by the witness" as required by the above quoted rule; rather, the only testimony was that the legal intern had taken "some notes."

## ISSUE II

■ A key witness for the State was to have been the victim's ten year old son, Elvis. Before he took the witness stand, it was learned from another State's witness that the youth had been receiving psychiatric counseling since his mother's death. The trial court ordered a hearing to determine whether the boy was competent to testify. Ben Glancy, a psychotherapist at the Child Guidance Center, testified at the hearing that he had seen the boy on nine occasions, that he did not discuss his feelings very openly, had normal intelligence and communicative skills, and showed no signs of mental illness. Glancy expressed the further opinion that the boy was able to differentiate between reality and fantasy, between the truth and a lie. On cross-examination, Glancy stated that the boy was not psychotic, though he was possibly neurotic in regards to his mother's death. At the conclusion of Glancy's testimony the defendant requested that the court appoint psychiatrists to examine the boy, which motion was denied.

Defendant asserts that Ind.Code 34–1–14–5 (Burns 1973) provides that insane persons, whether they have been so adjudged or not are incompetent witnesses and that, according to Glancy's testimony, the boy was "neurotic and severely depressed and should not be allowed to testify." However, our examination of the record reveals that the defendant's summary of Glancy's testimony is a gross misstatement of the record. Glancy testified that the boy had no abnormal personality disorders, that he was not psychotic although *possibly* neurotic. He further stated that while the boy was depressed about his mother's death, he was *not severely depressed.* Defendant's very loose interpretation of Glancy's testimony is apparently based upon the following colloquy on cross-examination:

"Q. Sir, let me ask you one question. From a course of treatment, forget the legal stuff, from a course of treatment, would it be your preference that this boy not have to testify?

"A. Yes."

It is obvious that Glancy's response to that question was concerned with the emotional comfort or well being of the witness, not with his competence as a witness.

In the case at bar, there was little or no evidence that the witness was incompetent to testify due to insanity. As this Court stated in *Reiff v. State*, (1971) 256 Ind. 105, 108, 267 N.E.2d 184, 185:

" * * * in *Antrobus* this Court did not mean to imply that every time a defendant requests a psychiatric examination of a witness the request must automatically be granted. The decision rests within the sound discretion of the trial court. In *Antrobus* the court did not conduct a hearing on the request of the appellant, whereas in the case at bar the court conducted a full hearing as to whether or not a psychiatrist should be appointed to examine the witness. It was after this hearing that the court determined the psychiatric examination was unnecessary. In *Antrobus* there was an abuse of judicial discretion in failing to grant the examination in the face of such overwhelming evidence, * * *."

The defendant has not shown that the trial court abused its discretion.

### ISSUE III

■ Elvis was eventually called to the witness stand to testify for the State. However, after answering only a few questions, he began to cry and a recess was called. Thereafter the State did not ask any more questions of him. When asked if he wished to cross examine the witness, defense counsel replied, "I can't do it. No questions." Defense counsel then moved for a mistrial charging that the State deliberately called the witness under circumstances which they knew would preclude his testifying on direct examination and being subjected to meaningful cross examination. The defendant asserts that he was thusly denied his Sixth Amendment right to confront witnesses against him. A hearing was held on the motion, outside the presence of the jury, at which time a Prosecuting Deputy Intern for the State testified that she had fully expected that the witness would be able to testify as to the events of the night in question and that she was surprised by his inability to maintain his composure. The motion for mistrial was denied.

The defendant contends that the trial court abused its discretion in denying the motion for a mistrial. We disagree. The record reveals that the direct examination of Elvis never progressed beyond a few preliminary questions that revealed his name, age, residence, the names of his brothers and sisters, and that his mother was dead. Upon being asked if he remembered the events of the previous summer, he began crying and the questioning was discontinued. In this brief colloquy there was *no* reference to the defendant and nothing said that implicated him in the homicide. The motion for mistrial was properly denied because he was not prejudiced by the boy's testimony. Nor was there any showing that the State had intentionally called the witness for the purpose of inciting passion, knowing that he would not be able to withstand the pressures of a complete examination. Additionally, we note that the defendant voluntarily declined his opportunity to cross examine the witness. The granting of a motion for mistrial rests largely within the sound discretion of the trial court, *Lolla v. State*, (1973) 260 Ind. 221, 294 N.E.2d 798, and no abuse of that discretion has been shown.

### ISSUE IV

■ The defendant next contends that the trial court erred in prohibiting the introduction into evidence of defendant's Exhibit L, certain welfare reports on the decedent. Defendant contends that these reports were offered to show that the decedent had one or more boyfriends, other than the defendant, and that he was attempting to prove a factual defense to justify his actions for the purpose of persuading the jury into returning a verdict of guilty as to a lesser-included offense. He argues that the welfare reports tend to corroborate his testimony that he had stabbed the decedent only after finding her in bed with another man. In refusing to admit the exhibit, the trial court stated that the defendant was attempting to attack the character of the deceased, a matter not in issue, and that the exhibit was otherwise irrelevant. We agree. The welfare reports tend to show only that the deceased had three children by three different fathers; they are not

relevant to the defendant's claim of having seen the deceased in bed with another man.

## ISSUE V

Claimed error with respect to the refusal of eight tendered final instructions was preserved by the motion to correct errors. On appeal, Defendant has expressly waived any claim with respect to four of such instructions but continues to claim error with respect to the refusal of the following four:

"*Defendant's Tendered Instruction No. 1*
"Sudden heat as passion is that state of mind, induced by provocation which causes an individual to act in a manner, controlled by that which is external and foreign to ones true nature. Rage and resentment are the states of mind most often described by the term sudden heat."

"*Defendant's Tendered Instruction No. 4*
"A killing may be unlawful and intentionally done yet, if it is done in a sudden heat and transport of passion, malice is not inferred and the offense is manslaughter."

"*Defendant's Tendered Instruction No. 5*
"When a wrong or injury has been done to a man which has excited his passion he need not have killed immediately for the offense to be manslaughter. Rather, he may have such time as is necessary for his passion to cool and if he strikes before such time has elapsed, the offense will be manslaughter."

"*Defendant's Tendered Instruction No. 6*
"Human experience will bear witness that provocation may excite a transport of passion accompanied by a momentary intention to kill the dearest and most beloved friend against whom no malice exists. Passion, rebuts the inference of malice and the offense is manslaughter."

■ The court is not bound to give an instruction, although it may be a correct statement of the law and applicable to the evidence, if the substance thereof is covered by instructions given. *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836.

The court's Instruction No. 32 was as follows:

"It is the law that the sudden heat of passion sufficient to reduce a homicide from murder to manslaughter must be accompanied by adequate provocation.

"Mere passion or anger alone is not sufficient to make an intentional homicide manslaughter without adequate provocation."

This instruction adequately covered "sudden heat" as a factor of reducing a homicide from murder to manslaughter. We are of the opinion that the defendant's tendered definition was unnecessary.

■ The court's final Instructions Nos. 27, 28 and 33, adequately explained and distinguished the degrees of murder and manslaughter. They were as follows:

"Final Instruction Number 27

"The Statute of the State of Indiana which defines and states the essential elements of the crime of MANSLAUGHTER, which may be included under the charge of FIRST DEGREE MURDER as shown in the indictment reads as follows:

"VOLUNTARY MANSLAUGHTER. Whoever voluntarily kills any human being without malice, expressed or implied, in a sudden heat, is guilty of voluntary manslaughter, and, on conviction, shall be imprisoned in the State Prison for not less than two (2) nor more than twenty-one (21) years.

INVOLUNTARY MANSLAUGHTER. Whoever kills any human being without malice, expressed or implied, involuntarily but in the commission of some unlawful act, is guilty of involuntary manslaughter, and, on conviction, shall be imprisoned in the State Prison for not less than one (1) nor more than ten (10) years."

"Final Instruction No. 28

"I instruct you that First Degree Murder may be said to consist of four elements:

"1. The killing of the decedent by the defendant by the means alleged.
2. With the intent to kill.
3. With malice and
4. With premeditation.

"If the first three elements are proved but premeditation is not proved, the crime is Second Degree Murder.

"If the first two elements are proved and also that the defendant acted in sudden heat, but neither malice nor premeditation is proved, the crime is Voluntary Manslaughter.

"If the first element only is proved, i. e. the killing of the decedent by the defendant, by the means alleged, and intent, malice and premeditation are not proved, then the crime is Involuntary Manslaughter; provided that it is also proved that the killing was done in the commission of an unlawful act."

"Final Instruction Number 33

"Such killing must follow the provocation and it is not required that such killing be immediate. However, if there has been time for the passion to subside the killing is not reduced to manslaughter. However, the length of time intervening between the provocation and the act of killing may be considered in determining whether the passion has subsided. You may also consider matters such as the state of mind of the accused, his temperment, physical organization and such other matters as may appear right and proper to you."

The defendant's tendered Instructions Nos. 4, 5 and 6 merely restated some of the same principles, but in a tenor that appears to be more conducive to considerations favoring a manslaughter verdict. We are of the opinion that the jury was properly and adequately instructed.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.