RAYMOND MILLER *v.* STATE OF INDIANA.

[No. 1274S245. Filed October 10, 1975. Rehearing denied December 15, 1975.]

*Ferd Samper, Jr., Grant W. Hawkins, Samper, Samper, Thoms & Hawkins,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

ARTERBURN, J.—Appellant Raymond Miller was indicted for first degree murder by the Marion County Grand Jury on March 7, 1974. He was charged with striking Arie Stanley Byrd with a hatchet on October 2, 1973, inflicting wounds which caused Byrd's death on December 23, 1973. Appellant

pled no guilty by reason of temporary insanity. He was found guilty of second degree murder, an included offense, and on September 26, 1974, was sentenced to imprisonment for not less than fifteen and not more than twenty-five years.

Appellant presents three issues in this appeal. First, he claims error in the admission into evidence of statements made by Appellant in the absence of proper *Miranda* warnings. Second, Appellant contends that there was fatal variance between the cause of death as proven and the cause of death as charged in the indictment. Third, it is maintained that this variance results in evidence insufficient to support the verdict. Because these last two issues revolve around the same question of law, whether or not the blows struck by the Appellant were the legal cause of the victim's death, they will be consolidated in this opinion.

## I.

Appellant contends that the standard four part *Miranda* warning given him by police officers who questioned him was inadequate in light of *Green* v. *State,* (1971) 257 Ind. 244, 274 N.E.2d 267. In that decision, this court said:

"The requirements set out in *Miranda* relating to the custodial interrogation of the criminally accused, to provide the necessary procedural safeguards are:

(1) The person must be warned that he has a right to remain silent;

(2) The person must be warned that any statements he does make may be used as evidence against him;

(3) The person must be informed that he has a right to the presence of an attorney, either retained or appointed;

(4) If the person indicates at any stage of the process he wishes to consult with an attorney before speaking there can be no questioning until the request is granted;

(5) If the person indicates at any stage of the process that he wishes not to be further interrogated, the interrogation must stop." *Green* v. *State,* (1971) 257 Ind. 244, 250, 274 N.E.2d 267, 270.

Appellant contends that this requires a five part warning. Appellant has misread the *Green* decision. What it requires in the way of information to an accused is the four part test of *Miranda,* parts (1)-(3) above. Parts (4) and (5) are guidelines for police conduct, not additional elements of the required warning. This contention by Appellant is thus without merit.

## II.

Appellant inflicted hatchet wounds on the victim on October 2, 1973. Death of the victim came on December 21, 1973, with pneumonia as the immediate cause. Appellant thus contends that there is inadequate connection between the blows he struck and the death to establish those hatchet blows as the cause of death.

We can not agree with this contention. Testimony at trial drew a direct connection between the victim's pneumonia and the blows struck by the Appellant. The pathologist who performed the autopsy on the deceased testified upon direct examination:

"My opinion is that this individual died as a result of pneumonia secondary to cranius malingre, meaning an injury to the skull and underlying brain."

Upon cross examination the doctor said:

"No. sir. Up until now I had not interpreted your question to be that directly. You have always talked in terms of possibility; therefore, anything is possible. So, my answer has to be 'anything is possible.' In regard to medical certainty and probability, it would be my opinion that his pneumonia resulted from his head injury."

Appellant contends that the failure of the indictment in this case to mention pneumonia constituted a fatal variance between that indictment and the proof offered at trial. The indictment charged that the Appellant murdered the victim by striking at and against the head of the deceased and that the deceased died of the mortal

wounds so inflicted. In view of the pathologist testimony above, the indictment's failure to mention pneumonia constituted no variance from the proof presented at trial. Even if we assume that a variance has occurred here, Appellant's contention is without merit. It is well-accepted that where a variance between the indictment and proof appears, in order to be considered a material variance it must have misled the defendant in the preparation of his defense or be of such a degree as is likely to place him in double jeopardy as a result. *Majors* v. *State,* (1969) 252 Ind. 672, 251 N.E.2d 571; *DeBruler* v. *State,* (1965) 247 Ind. 1, 210 N.E.2d 666; *Roberts* v. *State,* (1964) 245 Ind. 185, 197 N.E.2d 304; *Madison* v. *State,* (1955) 234 Ind. 517, 130 N.E.2d 35. The Appellant has not shown that he was misled in the preparation of his defense, nor that double jeopardy was somehow made more likely.

Because Appellant's sufficiency of the evidence argument also turns upon the question of legal causation, we find that it too is without merit. An individual who inflicts injury upon another is deemed by law to be guilty of homicide if the injury contributes mediately or immediately to the death of that other person. *Wahl* v. *State,* (1951) 229 Ind. 521, 98 N.E.2d 671; *Hicks* v. *State,* (1938) 213 Ind. 277, 11 N.E.2d 171, *cert. denied* 304 U.S. 564, 82 L.Ed. 1531, 58 S.Ct. 951. The evidence presented in this case was such that the jury could draw a reasonable inference that the blows admittedly struck by Appellant caused the ultimate death of their target.

Finding no error, we affirm the judgment of the court below.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., concurs in result with opinion.

### OPINION CONCURRING IN RESULT

DEBRULER, J.—*Miranda* v. *Arizona,* (1966) 384 U.S. 436, 88 S.Ct. 1602, 16 L.Ed.2d 694, requires that a person in

police custody be apprised prior to interrogation of the privilege against self-incrimination and the right to counsel which the Constitution grants him. In *Green* v. *State,* (1971) 257 Ind. 244, 274 N.E.2d 267, in conformity with this requirement, we set out the five categories of information which must be imparted to such persons in order to adequately apprise them of the extent of those rights in the interrogation context. Those five categories are quoted in the majority opinion from *Green* v. *State, supra,* and I shall not repeat them here. The advisement of rights given appellant here is as follows:

"1) You have a right to remain silent.
2) Anything which you say can be used against you in court.
3) You have a right to have a lawyer present now.
4) If you do not have the money to retain a lawyer, you have the right to have one appointed for you by the court."

This advisement is constitutionally deficient, in that it does not inform the person about to be interrogated that, if he chooses to answer questions without counsel present, he has a right at any time during interrogation to invoke the right to remain silent and to answer no further questions. It is also deficient in that it does not inform the person that, if he submits to the interrogation without counsel, he has a right at any time during interrogation to stop answering until he talks to a lawyer.

I would hope that prosecutors throughout the State, who have not already done so, would insist that law enforcement officials within their jurisdiction include in their advisement of rights some statement comparable to this:

"If you want to answer questions now without a lawyer present you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer." *United States* v. *Poole,* 495 F.2d 115, 117 n. 2 (D.C.Cir. 1974); *accord, United States* v. *Bailey,* 468 F.2d 652, 659 n. 6 (5th Cir. 1972).

However, under the circumstances of this case, the erroneous admission of appellant's statement given in the inter-

rogation which followed this deficient advisement was harmless beyond a reasonable doubt. *Chapman* v. *California,* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Harrington* v. *California,* (1969) 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. According to the testimony of the interrogating officer, this statement consisted of the answers to two questions. The officer testified in relation to them as follows:

> "I again asked him how long it took him to get the beer and he stated approximately five minutes, at which time I stated that there's no way that he could get to Tenth Street and back in five minutes if he ran, at which time he stated well, that's how long it took him."

Appellant gave no other information on this occasion.

Prior to giving this testimony, the same officer had testified that appellant was at the scene when the police arrived and accompanied them about the house and talked with them during their investigation at the scene. The victim at this time was alive and being administered medical treatment. During this initial investigation, appellant told the officer that he had been in the same house as the victim on the night of the attack, that he left the house for five minutes to get some beer, returned to the house, went to sleep in the basement, was awakened by the victim calling to him from the first floor through a register in the floor, went upstairs, turned on the light and discovered the injured victim, went outside to a neighbor's house and called the police and an ambulance. The admissibility of the officer's testimony describing what appellant said during this period of investigation is not an issue in this appeal. The information given by appellant in his two responses following the deficient advisement of rights at the police station was minimally and circumstantially inculpatory and was repetitive of this unchallenged statement given at the scene.

And further, when the victim died a month later, a warrant was issued for appellant's arrest on a murder charge. He surrendered in the company of his lawyer, and, with

his lawyer present, he gave a confession, in which he admitted for the first time that he had struck the victim. This statement was admitted without objection.

NOTE.—Reported at 335 N.E.2d 206.