DONALD BURRIS *v.* STATE OF INDIANA

[No. 2-677A239. Filed November 20, 1978.]

---

*Kenneth T. Roberts, Wilson, Coleman & Roberts,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Charles D. Rodgers,* Deputy Attorney General, for appellee.

MILLER, J.—Defendant-appellant, Donald Burris, was charged with Failure to Provide for Children Under Eighteen Years of Age,[1] the information reading in pertinent part as follows:

". . . Donald Paul Burris on or about the 21st day of July, A.D., 1976, at and in the County of Marion in the State of Indiana, was then and there the father and charged by law with the maintenance of Kimberly (12-15-60), Lori (6-8-62), Kristi (12-2-63), his children living in the County of Marion, State of Indiana, all under the age of eighteen (18) years, said children being then and there of the ages herein alleged; that the said Defendant, Donald Paul Burris, then and there was able by personal service, labor and earnings to support said child [sic] and that said Defendant, Donald Paul Burris, did then and there willfully neglect and refuse to provide said child [sic] with the necessary food, clothing, shelter and medical attention . . . ."[2]

---

1. IC 35-14-5-2. Repealed. For current version see IC 35-46-1-5.

2. Defendant was not charged with being able to provide support by having the "means" to do so as provided in the statute. IC 35-14-5-2 read as follows: "The father, or mother, or any person charged by law with the maintenance thereof, of a child or

After a trial to the court, he was found guilty as charged and sentenced to one to seven years imprisonment.

The issue presented in this case is whether the State produced evidence showing that the Defendant was "able by personal service, labor, and earnings" to support his minor children and wilfully neglected to do so. The Defendant moved, at the close of the State's evidence and again after resting without presenting evidence on behalf of the Defendant, for a dismissal based on insufficiency of evidence.

We reverse for the reason that there was insufficient evidence to prove the Defendant guilty as charged.

When a question of the sufficiency of the evidence is presented to this Court, we will consider only that evidence most favorable to the State and all reasonable inferences drawn therefrom. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment must be affirmed. *Schilling v. State* (1978), 268 Ind. 534, 376 N.E.2d 1142.

The sole witness for the State at the trial was the Defendant's ex-wife, Sharon Burris (Sharon). The only other evidence consisted of documents showing Defendant to be the father of the children, his obligation to support according to the provision in the divorce decree, and the record of support payments received by the clerk.

The facts and reasonable inferences therefrom most favorable to the State reveal that Defendant and Sharon were married in August, 1960, and during their marriage they had three children. They were divorced on November 29, 1967, the decree providing that Defendant pay $100 per month for child support. Between November, 1967 and April, 1970, Defendant paid $1,020 for support. After April, 1970, he made no further payments, and was in arrears at the time of the trial in the amount

children under eighteen years of age living in this state who being able *either by reason of having means* or by personal services, labor or earnings, shall wilfully neglect or refuse to provide such child or children with necessary and proper home, care, food and clothing shall be deemed guilty of a felony, and upon conviction be punished by imprisonment in the state prison or reformatory for not more than seven years nor less than one year . . ." (our emphasis)

of $9,980. The Defendant had no formal education or training for a skill. During his marriage to Sharon he disliked working and did not hold continuous employment. His jobs included occasional work at filling stations and, for a period of eighteen months, he was employed at a bank. The Defendant has lived in Arizona since the divorce.

Sharon had no personal knowledge as to whether or not the Defendant had been employed from 1968 through 1976. She also had no knowledge as to whether or not the Defendant suffered from any disease or infirmity during these years. She had no personal knowledge as to whether or not the Defendant was physically able by personal service, labor, or earnings to support the children from November 29, 1967, through the trial date.

Sometime since the divorce from Defendant, Sharon saw Defendant on at least one occasion when he was visiting Indianapolis with his second wife, Donna, with whom Defendant had children. At that time, the Defendant did not appear to be handicapped or disabled in any way. Since that visit, Sharon had no communication with the Defendant. Defendant had married Donna in 1967, shortly after the divorce. He had also later married Judy. At the trial he was accompanied by his fourth wife.

The trial judge, in finding Defendant guilty, stated:

"Now the evidence does show that Mr. Burris, at least made one trip from Arizona out here, which would indicate to me that his health was not one of disabling character, at least at one point in this period. He married twice since then, and perhaps the Court is entitled to infer, that when one marries and 'take [sic] on the obligation of another family, he feels some ability to earn, *unless he has independent means outside of earning* . . . . It seems to me that here is a case of where a man is [sic] not contributed, not one red cent to the support of his children for a period of six years. During that time he was able to travel, he was able to get married twice, get divorced twice. The lawyers I know out in Arizona don't work for nothing; he must have paid some money for his divorces; there was two of them out there; yet, not penny, one, for these children . . . . I can't see it any other way, except that he is guilty, and that will be the finding." (our emphasis).

It is fundamental that the State has the burden of proving beyond

a reasonable doubt each essential element of the crime charged, *Smith v. State* (1969), 252 Ind. 425, 249 N.E.2d 493, and the fact that this is a nonsupport case does not relieve the State of that burden. Wilfullness is an essential element of the crime charged here. *Pursifull v. State* (1973), 157 Ind. App. 560, 301 N.E.2d 226. In addition, the State must prove that the Defendant was "able . . . by personal service, labor, or earnings" to support his children.[3]

Proving wilfullness in nonsupport cases requires a finding of a deliberate or perverse design, malice, or an intentional or deliberate breach by the parent of his duty to provide for his children. *Hudson v. State* (1977), 175 Ind.App. 237, 370 N.E.2d 983; *Hummel v. State* (1920), 73 Ind.App. 12, 126 N.E. 444. The evidence must show more than mere carelessness and neglect. *Hudson v. State, supra.*

In *Francis v. State* (1945), 223 Ind. 186, 59 N.E.2d 565, the defendant was charged with "wilfully failing to provide food, clothing, shelter and medical attention" for his children.[4] The only issue was whether or not the evidence was sufficient to show that the failure to provide was "wilful". The court held that, "It is not necessary to prove the element of wilfulness by direct or positive evidence. This like any other fact may be proved by circumstantial evidence. *Schaffer v. State* (1939), 202 Ind. 318, 173 N.E.2d 229." *Id.* at 566 of N.E.2d. There

---

3. Our statute does not provide, as is the case in some other jurisdictions, that when the State proves an omission by the parent to provide support to the children a presumption arises that such omission was wilful. For example, *see* California's law at Cal. [Penal] Code § 270 (West), which provides the following: "Proof of . . . the omission by such parent to furnish necessary food, clothing, shelter or medical attendance or other remedial care for his or her child is prima facie evidence that such . . . omission . . . is willful and without lawful excuse." Nor does our statute provide that the inability of the Defendant to provide support is an exception which must be proved by the Defendant. For example, the Connecticut statute provides that any person who neglects or refuses to furnish support to his children shall be guilty of nonsupport "unless he shows to the court before which trial is had that, owing to physical incapacity or other good cause, he is unable to furnish such support." Conn. Gen. Stat. § 53-304.

4. IC 35-14-4-1. Repealed. The statute read in pertinent part: "[E]very person having any child under the age of eighteen years depending upon him or her for education or support, who wilfully neglects to furnish necessary food, clothing, shelter and medical attention for his or her child or children, ward or wards, shall be deemed guilty of a misdemeanor . . ." For current version *see* IC 35-46-1-5.

was evidence at trial that the defendant had been ill for a matter of years. Two physicians made statements in writing that defendant could not work at hard labor. However, there was also evidence that the defendant would quit a job and then loaf around town and that twice during the year preceding the filing of the charge he had passed a physical examination when applying for work. The court held that there was sufficient evidence from which the trier of fact could infer wilfullness.

The state argues that *Francis* supports the Defendant's conviction since it held that the element of wilfullness may be proved by circumstantial evidence. However, in *Francis* there was evidence that the defendant had jobs which he quit and that he had passed two physical examinations when applying for jobs. In our case, the only evidence of the Defendant having jobs was *during* his marriage to Sharon, and that evidence is irrelevant to the date charged here. Thus, *Francis* does not support Defendant's conviction in this case.

The sole question in *Hudson v. State, supra,* was whether the evidence was sufficient to support the decision of the trial court finding the defendant guilty of wilfully neglecting to provide support to his children in violation of IC 35-14-4-1. Therefore, where *Hudson* discusses the element of "wilfullness," it is applicable in the case at bar. In affirming the trial court's decision, this Court said the following at p. 984-5 in 370 N.E.2d:

> "The evidence in the case at bar shows that Hudson quit working, both in his own business and for hourly hire, by March, 1975. He was not confined to a hospital nor was he in any way physically or mentally incapacitated. However, he did spend about four months in jail following convictions for the offenses of burglary and shoplifting. Several times, after October, 1975, the children's mother told him to get a job and to straighten up so that his children would have some respect for him. Whenever she asked him what he would do about it, the only answer she got from him was 'I don't know.'
>
> Wilfullness may be more easily shown under circumstances where the parent refuses to support the child when he clearly has the financial means. Cf., *Horlock v. Oglesby* (1968), 249 Ind. 251, 231 N.E.2d 810. However, we find sufficient evidence from which reasonable men could find beyond a reasonable doubt that Hudson

was deliberately pursuing an irresponsible lifestyle, that he intentionally failed to conscientiously seek employment, and that he wilfully neglected to provide support for his children."

In the case before us there is no evidence in the record which would tend to show that the Defendant was deliberately pursuing an "irresponsible lifestyle", or that he failed to conscientiously seek employment.

Cases in other jurisdictions support our position that the evidence was insufficient in this case. In *State v. Nelson* (Mo. App. 1971), 463 S.W.2d 614 it was charged that the defendant did "unlawfully and wilfully fail, neglect and refuse to provide, without good cause, the necessary and proper food, clothing, maintenance and support for his lawful minor children."[5] The State conceded it had to prove defendant's ability to support the children in order to establish that he acted "without good cause". The court pointed out that the only evidence regarding the defendant's ability to provide adequate support for his children came from the complainant-wife. She had testified that the defendant was able to work but that he did not like to do so. She stated that she thought the defendant was working, however she did not know for certain whether or not he was working. The court stated the following:

"There is no evidence as to whether he [the defendant] actually was working during the period of time covered by the information, no evidence tending to prove that work was available to him, no evidence except the conclusion of complainant, that he was physically able to work." *Id.* at 617.

The court held that the evidence was insufficient to prove that the defendant failed to furnish support "without good cause," and reversed the conviction.

In *State v. McMillan* (1971), 10 N.C. App. 734, 180 S.E.2d 35, the court held that the essential element of wilfullness had not been proven in a prosecution for failure to provide support.[6] In reversing, the court said the following at page 36 of 180 S.E.2d:

"[i]n the instant case there is not one scintilla of evidence in the

5. *See,* Mo. Ann. Stat. § 559.353 (Vernon).

6. N.C. Gen. Stat. § 14-322.

record that the defendant is employed, or that he owns any property, or has any income or any ability whatsoever to contribute to the support of his children; nor is there any evidence that the defendant has failed to apply himself to some honest calling for the support of himself and family, or that he is a frequenter of drinking houses, or is a known common drunkard . . . . The record is devoid of evidence from which the jury might infer that the defendant wilfully or intentionally failed to discharge his obligation to support his children."

The record in this case is also devoid of such evidence.

Here, as in *Nelson, supra,* the only evidence of Defendant's ability to support his children came from the complainant. However, Sharon did not even state that she "thought" the Defendant was or had been working at the time alleged. She simply did not know whether or not he had worked from 1968 through 1976 and had no knowledge as to whether or not he was physically able to work.

The trial judge stated he was drawing the inference that the Defendant was "able" to support the children from facts showing (1) at least once during the time between the Defendant's divorce from Sharon in 1967 and the trial date, the Defendant travelled from Arizona to Indianapolis, and (2) the Defendant had re-married three times and received two divorces since his divorce from Sharon. There is no evidence in the record as to when the Defendant made a trip or trips from Arizona (i.e. no evidence that they were within five years of July 21, 1976, so as to be within the five year statute of limitations) or whether he or his second wife paid for them. There is also no evidence that the Defendant was able to pay for his other divorces, or that he in any way was able to, or did, support his other wives.[7] All of

---

7. In the recent case of *Zablocki v. Redhail* (1978), 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed. 2d 618 the United States Supreme Court struck down a Wisconsin statute which required residents who are obligated to support minor children not in their custody to seek court permission to marry. In order to get this permission the applicant must have proven that he had complied with the original support obligations and must have demonstrated that these children were not likely to become public charges in the future. The Court held that the statute violated the Equal Protection Clause in that it seriously infringed upon a fundamental interest, the right to marry. Mr. Justice Stevens, in his concurring opinion stated: "The statute prevents impoverished parents from marrying even though their intended spouses are economically independent. Presumably, the Wisconsin

this combined with the fact that there is no evidence of any job which the Defendant held since his divorce from Sharon or that he was physically capable of holding such jobs leads us to the conclusion that there was not substantial evidence of probative value from which the trier of fact could reasonably infer beyond a reasonable doubt that the Defendant was "able" to support his children and "wilfully" did not do so. *Substantial* evidence means more than *seeming* or *imaginary,* and mere suspicion or possibility of guilt is insufficient to support a conviction. *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658; *Baker v. State* (1956), 236 Ind. 55, 138 N.E.2d 641. The State failed in its burden of proof in this case.[8]

Pursuant to *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, where the Supreme Court held that the double jeopardy rule precludes a second trial and commands acquittal of a defendant when a reviewing court finds the evidence insufficient, we reverse and direct the trial court to enter a judgment of acquittal for the Defendant.

Young, J., concurs.

Chipman, J., concurs.

NOTE — Reported at 382 N.E.2d 963.

---

Legislature assumed (a) that only fathers would be affected by the legislation, and (b) that they would never marry employed women." Also, in *Boddie v. Connecticut* (1971), 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 the Supreme Court held that a state law requiring filing fees for divorces violated the Due Process Clause because it deprived a large class of indigents of access to the courts where the access was necessary to dissolve marriages.

8.   Even the trial judge expressed uncertainty as to the effect of certain evidence when he said in his finding:   ". . . He married twice since then, and perhaps the Court is entitled to infer, that when one marries and take [sic] on the obligation of another family, he feels some ability to earn, *unless he has independent means outside of earning.* . . ." As noted earlier, Defendant was not charged with having the "means" to support the children.