James REED, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2-477A146.

Court of Appeals of Indiana, Fourth District.

March 28, 1979.

Rehearing Denied April 17, 1979.

Robert W. Hammerle, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Defendant Reed was convicted by a jury of causing the death of another while driving under the influence of liquor and sentenced to five years imprisonment with a fine of $1,000.00.

We reverse because the State failed to present any substantial evidence that Defendant's unlawful conduct was the proximate cause of an injury to the victim which ultimately resulted in her death.

Defendant was charged with violation of IC 9–4–1–54(b)1 which reads in pertinent part as follows:

"Any person who while under the influence of intoxicating liquor * * * operates or drives a vehicle and when so operating or driving causes the death of another person, is guilty of a felony * * *."

The language of the indictment, omitting formal parts, was as follows:

"* * * JAMES REED, on or about the 5th day of August, A.D., 1976, at and in the County of Marion and in the State of Indiana, did unlawfully and feloniously drive and operate a motor vehicle, to-wit: A 1968 Ford automobile, upon a public street in the City of Indianapolis, County of Marion, State of Indiana, to-wit: On East 9th Street, 75 feet east of its intersection with North Park Avenue, while under the influence of intoxicating liquor and thereby caused the death of EDNA FINKBAUM, to-wit: By driving and operating the aforesaid motor vehicle as aforesaid into and against with great force and violence two (2) lawfully parked automobiles and thereby inflicted mortal wounds and injuries in and upon the body of the said EDNA FINKBAUM, a passenger in the automobile being operated as aforesaid by the said JAMES REED, of which mortal wounds and injuries the said EDNA FINKBAUM sickened and lanquished, and while so languishing, did in the said County of Marion, State of Indiana on the 6th day of August, A.D. 1976, die, and the mortal wounds, injuries and death of the said EDNA FINKBAUM were proximately caused by and were the direct results of the aforementioned unlawful acts of the said JAMES REED in driving and operating said 1968 Ford automobile as aforesaid, all of which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The State presented four witnesses at the trial. Two neighbor eyewitnesses testified that on August 5, 1976, at 4:00 p. m., the Defendant, driving his 1968 Ford stationwagon with Edna Finkbaum as a passenger, started his car from a parked position, struck two cars parked nearby and, finally, accelerated to a speed of between 35 and 45 m. p. h. and drove directly into a brick building. Neither eyewitness testified as to any injuries received by Ms. Finkbaum nor did they indicate where she was seated in the stationwagon. One of said witnesses established the fact that Defendant was intoxicated.

Pathologist James A. Benz performed an autopsy on Ms. Finkbaum two days later at noon on August 7, 1976. He testified from hospital records that she had died the day before, on August 6th at 7:50 p. m. From his own examination it was his opinion that Ms. Finkbaum died as a result of a closed head injury, that is, a blow to the head which resulted in injuries to the brain and the formation of a blood clot which had been surgically removed before she died. He noted that such an injury is produced from a blow to the head or by the head striking a fixed object. The doctor then answered the following questions:

Q. "Doctor, if I told you that the decedent was involved in an automobile accident in which the automobile hit a fixed object at a speed of forty miles an hour, would that be consistent with the injuries sustained?

A. "Yes, sir.

Q. "Could this injury have been sustained in a light fall?

A. "It depends on your definition of a light fall.

Q. "Well, if a person fell and hit his head, say lightly on the ground.

A. "Well, I have seen subdural hematomas caused by people falling and striking their head on the ground, yes, sir.

Q. "Do you have any opinion as to whether this was caused in such a manner?

A. "No, sir."

It was Dr. Benz' opinion that the blow occurred a day or two before death, although it was possible that it occurred as much as two days before the automobile

accident. He noted that the surgeon who observed the blood clot upon its removal could make a more accurate estimate of when the injury occurred.

The State's last witness was a police officer who arrived at the scene shortly after the accident. He was able to form an opinion that the Defendant was then under the influence of liquor. He observed the scene of the accident and the three wrecked automobiles, including Defendant's car which was still embedded in the building. On cross-examination he related a conversation with medical technicians at the scene who told him they did not believe Ms. Finkbaum was seriously injured and that she had sustained a knee injury.

The defense called three witnesses who resided in the same apartment building with the Defendant but were not witnesses to the accident. The purpose of their testimony was to attest to the fact the deceased was an alcoholic and had been observed falling down, due to her intoxication, on numerous occasions including an incident fifteen minutes before the accident when she fell and hit the porch steps.

DECISION:

 Initially, we stress the fact that we are fully aware of our appellate responsibility to consider only that evidence most favorable to the State and all reasonable inferences drawn therefrom in determining the sufficiency of the evidence. Also, if there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment must be affirmed. *Schilling v. State* (1978), Ind., 376 N.E.2d 1142; *Burris v. State* (1978), Ind.App., 382 N.E.2d 963.

We have no difficulty in finding that there was very substantial evidence that the Defendant was driving his vehicle while under the influence of intoxicating liquor and as a result of his intoxication drove his car at an excessive speed directly into a brick wall. We fail, however, to find any substantive evidence that Ms. Finkbaum, a passenger in the car, received a head injury

or, for that matter, any injury in the accident which resulted in her death.

 In a homicide case the State must present evidence that the defendant inflicted, or caused to be inflicted, an injury upon the victim which contributed mediately or immediately to his death. *Miller v. State* (1975), 263 Ind. 595, 335 N.E.2d 206; *Bivins v. State* (1970), 254 Ind. 184, 258 N.E.2d 644; *Wahl v. State* (1951), 229 Ind. 521, 98 N.E.2d 671; *Hicks v. State* (1938), 213 Ind. 277, 11 N.E.2d 171, 12 N.E.2d 501, cert. den. 304 U.S. 564, 58 S.Ct. 951, 82 L.Ed. 1531. Further, in reckless homicide cases, it is settled that the State must prove the defendant's unlawful conduct (reckless driving) is the direct and proximate cause of the death of the victim. *Carter v. State* (1968), 250 Ind. 50, 234 N.E.2d 850; *State v. Kelsey* (1975), Ind.App., 325 N.E.2d 218. Such rule is equally applicable here. Both the statute, IC 9–4–1–54(b)1, *supra,* and the charging indictment required proof that the alleged "mortal wounds, injuries and death" of Ms. Finkbaum were proximately caused by and the direct result of the unlawful acts of the Defendant.

 Thus, simply stated, it was incumbent upon the State in this case to prove the deceased received a blow to her head in the automobile crash. This the State failed to do. In fact, the only evidence from witnesses at the scene, although hearsay, indicated she had received a knee injury and otherwise was not seriously injured. There was no evidence that she was taken to the hospital as a result of the accident. The evidence reveals merely a "possibility" that Ms. Finkbaum received a head blow during the accident and we would be required to speculate that such was the case. It is true that the State may prove an essential element of the crime based on facts or reasonable inferences to be drawn from facts. However, "[a]n inference cannot arise or stand by itself. There must first be a fact established from which an inference arises." *Palace Bar, Inc. v. Fearnot* (1978), Ind., 381 N.E.2d 858, 861. Dr. Benz' testimony indicated the deceased died from a blow to her head or as a result of

her head striking a fixed object. Of course, he had no personal knowledge of how the blow was inflicted. However, he acknowledged the blow was "consistent" with injuries received in automobile accidents or possibly could have resulted from a fall. Again, in *Palace Bar, Inc., supra,* at page 864 of 381 N.E.2d our Supreme Court defined the probative value of expert medical testimony as follows:

"The probative value of the testimony of an expert witness is such witness' opinion as an expert based on facts and circumstances given to him or shown to him subsequent to the occurrence of the event. A doctor's testimony can only be considered evidence when he states that the conclusion that he gives is based on reasonable medical certainty that a fact is true or untrue. A doctor's testimony that a certain thing is *possible* is no evidence at all. His opinion as to what is possible is no more valid than the jury's own speculation as to what is or is not possible. Almost anything is possible, and it is thus improper to allow a jury to consider and base a verdict upon a 'possible' cause of death."

In the case at bar Dr. Benz testified with medical certainty that the deceased died as a result of a blow to her head. Without any additional evidence relating to how she received her injury, his statement that the injury was "consistent" with an injury received in an automobile accident, standing alone, establishes no more than the "possibility" that such was actually the case.

We are unable to discern from this record why the State made no attempt (other than by hypothetical questioning of a doctor who had examined the deceased two days after the incident) to prove that Ms. Finkbaum received a head injury in the automobile crash. The medical technicians at the scene who apparently examined Ms. Finkbaum were not called to reveal her condition at that time or to indicate whether she was taken to the hospital from the scene. Nor were any hospital employees or medical personnel called to present evidence indicating when Ms. Finkbaum was admitted to the hospital and the nature of her injuries upon admission. The surgeon who removed the blood clot did not testify as to the time of the operation or the nature of the blood clot upon its removal, which latter evidence, according to Dr. Benz, would have established with more certainty the time of the injury.

■ It is our appellate function to affirm the right of the trier of facts, in this case the jury, to draw an inference that was reasonable under the circumstances. "If, however, the inference drawn by the trier of facts must rest upon speculation or conjecture, it cannot be drawn beyond a reasonable doubt, and we are required to set it aside as a matter of law. 'It is not enough to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion or amount to a scintilla.' *Baker v. State* (1956), 236 Ind. 55, 60, 138 N.E.2d 641, 644." *Sansom v. State* (1977), Ind., 366 N.E.2d 1171. Thus, the mere suspicion or possibility of guilt is not sufficient to support a conviction. *Burris, supra; Matthew v. State* (1972), 154 Ind.App. 182, 289 N.E.2d 336; *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658.

■ Because the State failed in its burden of proof that Ms. Finkbaum's death was proximately caused by the unlawful acts of the Defendant, we reverse Defendant's conviction and direct the trial court to enter a judgment of acquittal.

SHIELDS, J., concurs.

BUCHANAN, C. J., dissents with opinion.

BUCHANAN, Chief Judge, dissenting.

I respectfully suggest that the majority have weighed the evidence.

During the examination of Dr. Benz, the pathologist, the following exchange occurred:

Dr. Benz: It's my opinion that Edna Finkbaum died as a result of a closed head injury, I would say traumatic injury to the head which resulted in injuries to the brain and a formation of a blood clot which had been removed surgically.

. . . . .

Dr. Benz: Traumatic injury would be an injury produced as a result of trauma, some blow or the head striking a fixed object.

Prosecutor: Doctor, if I told you that the decedent was involved in an automobile accident in which the automobile hit a fixed object at a speed of forty miles an hour, would that be *consistent with the injuries sustained*?

Dr. Benz: Yes, sir.

. . . . .

Dr. Benz: The findings within the brain were consistent that trauma had occurred a day· or so prior to death.

Attorney: . . ., is not your finding also consistent that the trauma that resulted in the formation of the subdued hemotoma could have happened during one of the falls?

Dr. Benz: I would say *it's possible but not probable.* (emphasis supplied)

Thus, Dr. Benz testified that the decedent's death by a traumatic blow to the head was "consistent with" the automobile accident, and that death was "possible but not very probable" from a fall. This adds up to me as the statement of a *reasonable medical certainty* of fatal injury caused by the automobile accident. A mere statement of a possibility is not evidence.

As Justice Pivarnik concluded in *Palace Bar, Inc. v. Fearnot* (1978), Ind., 381 N.E.2d 858, 864: "A doctor's testimony can only be considered evidence when he states that the conclusion he gives is based on *reasonable medical certainty* that a fact is true or untrue. A doctor's testimony that a certain thing is possible is no evidence at all."

Thus, I would conclude that there was sufficient evidence, including causation, to affirm the conviction.