Harold Lee POWELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 681S176.

Supreme Court of Indiana.

July 26, 1982.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Aimee L. Kolze, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was convicted of murder, Ind. Code § 35–42–1–1(1) and sentenced to imprisonment for forty years. On appeal he raises the following issues:

(1) Error in the trial court's determination of the admissibility of a statement made by appellant to police.

(2) Sufficiency of evidence to show a knowing or intentional killing.

The body of Ms. Janelle Cannon was discovered in her apartment by the overseer of the building. She was lying face up on a couch with a blanket over her face. Her dress had been pulled up above her waist. Her legs were spread wide apart and her panties had been ripped off. The cause of death was found to be suffocation. Appellant stated to the police that he had been in the apartment and had placed his hand and then a blanket over her face to quiet her when she began screaming, and that when she had stopped moving and appeared to be asleep, he had sexual relations with her.

### I.

After having been arrested at 2:00 a.m. appellant was taken to the police station and interrogated by Detective Jonnie Layton, and admitted assaulting Ms. Cannon in her apartment.

At trial the State called Detective Layton as a witness and he related reading appellant a warning of rights and appellant's signing a waiver form prior to the start of interrogation. The detective questioned him until 6:00 a.m. During this time he gave several different versions of events and gave the one admitted at trial over objection at the end of the period. The witness stated that he smelled alcoholic beverage on his breath, but that he was definitely not drunk and was very alert. He spoke in a low tone, but did not have slurred speech. He was given time to read and consider the waiver before signing it. He had an eleventh grade education and could read and write although with some difficulty. He was an alcoholic. At the time he signed the waiver he knew that the police had been looking for him for killing the victim. He had several prior felony convictions.

Upon the issue of the admissibility of appellant's station house statement being raised, the burden fell upon the State to prove beyond a reasonable doubt that prior to the statement appellant waived his right to counsel and the privilege against self-incrimination and that the statement thereafter following was voluntary. The claim of erroneous admission is to be resolved on appeal by examination of the evidence tending to support the determination of the trial court that the waiver of rights and the statement were knowingly and intelligently made and were not "induced by any violence, threats, promises, or other improper influence." *Montes v. State*, (1975) 263 Ind. 390, 332 N.E.2d 786.

An express written or oral waiver of rights is "not inevitably either necessary or sufficient to establish waiver." *North Carolina v. Butler*, (1979) 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286; *Dickerson v. State*, (1972) 257 Ind. 562, 276 N.E.2d 845. The written waiver here was signed a few minutes after appellant first arrived at the station. Appellant points out that he was roused from sleep about one-half hour before the waiver was given, that he had been drinking all day and all night, that he had problems reading and writing, and was an inexperienced criminal defendant. Giving due regard to these assertions as reflecting historical fact, the trial court was nevertheless warranted in concluding from all of the material evidence bearing on the question, including the testimony of Detective Layton, described above, that appellant was nevertheless unimpaired in his cognitive faculties and ability to exert his will. There is no inference suggested that appellant succumbed in giving the waiver to a form of coercion, threat, or improper influence by the police. The determination that appellant waived his *Miranda* rights voluntarily and intelligently is supported by sufficient evidence.

About three hours after waiving rights, appellant gave his confession. He at first gave several exculpatory statements, but under continued interrogation, which included the pointing out of inconsistencies in these statements by the interrogator, he relented and gave the challenged confession, in which he admitted assaulting the victim by holding a blanket over her mouth, but steadfastly disclaimed any intent to harm or kill her, but only sought to quiet her screaming at him to remove his friend from her apartment, and to stem the confusion which she was causing.

In support of this claim, appellant asserts that in addition to being inexperienced, tired, and intoxicated, he was subjected at the station to coercion in the form of psychological techniques employed by the interrogator. As before, the trier of fact was warranted in believing the testimony of Detective Layton that appellant was unimpaired by his previous consumption of alcohol, his having been awakened and arrested in the middle of the night, and his inexperience with serious interrogation. The technique of the interrogator was to express disbelief in the version of events given by appellant, and then continue questioning in order to "aid" appellant in finding the "truth". There was present, also, testimony of the detective that he offered appellant the use of a restroom and water, and that at one point in the interrogation gave him a cup of coffee. The interrogator reminded him during the period that he could stop answering questions at any time. In circumstances such as these the suspect chooses to pit himself against the interrogator and to "tough it out," and as is often the case, ends up giving a full confession. When the interrogator limits his questioning to assertions of disbelief, and to pointing out obvious inconsistencies and absurdities, a subsequent confession is not necessarily rendered involuntary. In a similar situation in *Montes v. State, supra,* we said:

"Appellants freely chose to relinquish their right to remain silent and chose to subject themselves to the verbal inquiries of the police. So long as verbal inquiries involve no threats, promises, falsehoods, or the like, but are direct statements probing the suspect's knowledge of relevant events, including inconsistencies in answers given, they do not, without additional circumstances indicating compulsion result in involuntary divulgence of information." 263 Ind. at 402, 332 N.E.2d 786.

The case often is, as it is here, that the suspect, when faced with the resistance of the interrogator to his statements and his own belief that those statements are really not tenable, makes a choice to confess which is "freely self-determined." *Shotwell Manufacturing Co. v. United States,* (1963) 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357. Cf. *Rhode Island v. Innis,* (1980) 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297. The conclusion required here on appeal is that the trier of fact was warranted in concluding that the employment of these techniques of questioning, for a period of three hours, under these circumstances did not rise to coercion or improper influence, and that the confession was beyond a reasonable doubt voluntarily given. There was therefore no error in its admission at trial.

## II.

Appellant contends that the evidence presented at trial was insufficient to sustain the verdict of the jury that he had knowingly or intentionally killed. The State was under the duty of proving that appellant acted either knowingly or intentionally as defined by Ind.Code § 35–41–2–2.

"Sec. 2. (a) A person engages in conduct 'intentionally' if when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

The State must also prove that the conduct engaged in caused death. Such conduct must be a direct and efficient cause of death. *Miller v. State,* (1975) 263 Ind. 595, 335 N.E.2d 206.

There is ample evidence from which to infer the requisite state of mind. Three or four days before the attack, the victim had appellant's clothes removed from her apartment and he said that he would get even with her for doing so. In his confession, he admitted placing his hand and the blanket over her mouth, and persisted in this conduct against her physical resistance until she no longer moved. From this evidence the jury was warranted in concluding beyond a reasonable doubt that the conduct was accompanied by the requisite knowledge.

There is likewise ample evidence that appellant's conduct in attacking this woman caused her death. The pathologist testified that in his opinion she died of suffocation. The victim's upper dentures were located in the back of the mouth during his examination, and police at the scene placed the dentures in the area at the back of the throat. The victim had a great deal of alcohol in her blood and additional alcohol in her stomach. From this evidence the jury was warranted in concluding beyond a reasonable doubt that the process which prevented air from reaching the lungs of the victim was commenced when appellant placed the blanket over her mouth and was sustained by his continuing to hold the blanket in that position through the application of force. That this force also knocked the victim's dentures down her throat at some time in the process, thereby restricting air to the lungs, and that the victim was in a weakened condition due to her consumption of alcohol throughout the process, does not, as argued by appellant, demonstrate the lack of direct connection between his conduct and her death.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.