**Lyman THOMAS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee.**

**No. 45A03–8706–CR–156.**

Court of Appeals of Indiana, Third District.

Nov. 30, 1987.

William T. Enslen, Gregory W. Brown, Enslen, Enslen & Matthews, Hammond, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Lyman Thomas appeals from his convictions for official misconduct, IND.CODE § 35–44–1–2(1) (1982) and theft, IND. CODE § 35–43–4–2 (1987 Supp.). The trial court entered judgment on the jury's verdict and gave Thomas a sentence of two years on the theft charge, suspending one year and giving one year of probation, and a sentence of one year on the official misconduct charge with one year probation.

The facts most favorable to the trial court's judgment show that, during a routine shakedown conducted at the Indiana State Prison in Michigan City, prison officials found in a prisoner's possession a motel receipt dated July 9, 1985. The search also uncovered photographs of the prisoner's wife that bore a handwritten notation with the same date. At the time of trial in October 1986, the prisoner had been incarcerated for eighteen years.

The items were turned over to an investigator who learned that on July 9, 1985 the prisoner, James Blackburn, had accompanied a truckload of prison manufactured license plates being shipped from the Indianapolis airport. The driver of the truck was, prison employee, Lyman Thomas.

Further investigation revealed that Thomas and Blackburn left the prison at 5:00 A.M. on July 9 and returned at 7:20 P.M. that night. The evidence showed that the pair arrived at Indianapolis Airport at 9:15. They subsequently made stops in Indianapolis at the State House and at La-Rue Carter Hospital. From this point Thomas and Blackburn began their return

to Michigan City, although there is little direct evidence describing the events of their return journey.

The motel receipt found in Blackburn's possession was from a truckstop motel located near Grovertown, Indiana, on U.S. 30. The motel is about an hour's drive from the prison and is not along the most direct route from Indianapolis to Michigan City. At trial, the motel cashier did not specifically remember either Blackburn or Thomas, but she surmised that the receipt must have been written before 3:00 P.M., because that was when her shift was over. The motel receipt indicated that Room 11 was rented. The investigator's photographs of this room were introduced with the pictures confiscated from Blackburn and comparison showed substantial similarity.

Additionally, before leaving the prison that morning, Thomas was issued $30.00 as the standard meal allowance. The prison meal receipt forms that Thomas allegedly submitted claimed that the evening meal had been eaten at a truckstop along Interstate 65.

Thomas testified in his own behalf and was unable to add much detail, other than to say that he and Blackburn did not leave Indianapolis until 2:00 p.m. Thomas also denied that he stopped at the Grovertown truckstop to permit Blackburn to meet his wife. Both Blackburn and his wife were called to testify, and each repeatedly invoked their Fifth Amendment rights against self-incrimination.

On appeal Thomas raises several issues; however, it is only necessary to address two, which, although separately discussed, can be simply stated as:

whether there is sufficient evidence to sustain either the conviction for theft or the conviction for official misconduct.

It is by now nearly axiomatic that on review of sufficiency of the evidence questions, this Court will neither reweigh the evidence nor judge the credibility of witnesses. Instead only the evidence most favorable to the State together with the reasonable inferences to be drawn therefrom will be considered. If, on this basis, there is substantial evidence of probative value on each element, from which the jury could reasonably have inferred guilt beyond a reasonable doubt, the conviction will be affirmed. *See e.g., Parks v. State* (1987), Ind., 513 N.E.2d 170.

■ In order to sustain a theft conviction there must be proof that the defendant knowingly or intentionally exerted unauthorized control over another's property with intent to deprive the owner of the value or use of the property.

IND.CODE § 35-43-4-2; *Evans v. State* (1986), Ind.App., 493 N.E.2d 806. In the present case the information charging theft was based on allegations that Thomas exercised unauthorized control over the meal money and approximately three hours of overtime pay.

It is obvious that in this case the threshold question is whether Thomas' control over the State's money was unauthorized and whether Thomas knew his control was unauthorized. This is because there is really no question that Thomas knowingly exerted control over the money. The question is, instead, whether his control was wrongful or unauthorized. Analysis of the trial evidence on the issue of authorization reveals no factual basis from which the jury could reasonably have found that this critical element had been proved.

Regarding the alleged theft of meal money, it is clear that Thomas was authorized to receive the money; that he obtained the money according to standard procedures. There is some factual conflict about exactly where Thomas ate his meals, but the investigating officer specifically testified that he had no evidence that Thomas did not eat the meals as claimed. Thus there is no evidence that Thomas made any unauthorized use of the meal money at all.

There is also insufficient evidence that Thomas' control over the overtime pay was unauthorized. On this point, the State's case is based on the three hours that Thomas allegedly waited at the Grovertown motel. Even assuming, without so holding, that the State properly introduced evidence establishing the three hour wait, the State

did not introduce any evidence, direct or circumstantial, from which the jury could reasonably have inferred that the wait was unauthorized. None of the State's witnesses spoke to this issue. In fact, the only related evidence came from Thomas himself who testified that he was never given any instructions regarding the sort of activity in question here. Therefore there was no evidence that Thomas' control over the overtime pay was unauthorized.

In reaching this conclusion, this Court is aware of the standard of review, and that the State is entitled to prove an essential element of a crime by reasonable inference. However, inferences cannot arise or survive in a vacuum. There must be properly established facts from which the inferences arise. *See, Palace Bar, Inc. v. Fearnot, Admx.* (1978), 269 Ind. 405, 381 N.E.2d 858; *Reed v. State* (1979), 180 Ind.App. 5, 387 N.E.2d 82. In the present case there are no established facts from which the jury could reasonably have inferred that Lyman Thomas exerted unauthorized control over any of the State's money. The jury's implicit finding on this issue, therefore, could have only been based on speculation or conjecture. Since the State failed to prove an essential element of the crime, the theft conviction must be reversed.

Thomas next challenges the sufficiency of the evidence to sustain his conviction for official misconduct. The portion of the official misconduct statute under which Thomas was charged requires the State to prove that Thomas was a public servant, who knowingly performed an act that he was forbidden by law to perform. IND. CODE § 35-44-1-2(1).

The charging affidavit in this case, omitting the formal parts, alleged:

"[O]n the 9th day of July, 1985, ... Lyman R. Thomas, did then and there unlawfully, knowingly and intentionally while acting in his offical [sic] capacity as a public servant transported [sic] an imate [sic] of the Indiana State Prison to a motel for the purpose of allowing the inmate to have a conjugal visit with his girlfriend while such activity on the part

of Lyman R. Thomas was forbidden by law."

Based on a simple reading of this information, it is clear that this conviction cannot stand.

The facts alleged in the information and as established at trial do not constitute the criminal act of official misconduct. One of the essential elements of the crime is that the act alleged must be forbidden by law. The act, by a prison guard, of permitting a prisoner to have a conjugal visit is highly irregular and irresponsible; however, neither our research, nor do the parties' briefs reveal any statute or regulation outlawing such conduct. Thomas' conduct certainly would be grounds for severe disciplinary action, but the criminal justice system is not intended to handle personnel matters. Since the information does not charge an unlawful act, and the trial evidence does not establish any other unlawful act, the conviction for official misconduct is not supported by sufficient evidence and it must be reversed.

For all of the foregoing reasons, the convictions for theft and official misconduct are reversed.

Reversed.

GARRARD, P.J., and NEAL, J., concur.